UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KWIK TICKET INC., by its 50% owner FLORENCE SHAMAH,

Plaintiff

-against-

LARRY SPIEWAK et al.,

Defendants.

Case No. 20-cv-01201 (FB) (SJB)

**DEFENDANTS LARRY AND MINDY SPIEWAKS' OBJECTIONS TO JUDGE SANKET J. BULSARA'S JUNE 5, 2020 MINUTE ENTRY AND ORDER**

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
*Attorneys for Defendants*
*Larry Spiewak and Mindy Spiewak*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

FACTUAL AND PROCEDURAL BACKGROUND..... 2

LEGAL STANDARD..... 5

ARGUMENT ..... 5

I. The Magistrate Judge Should Have Stayed Merits Discovery Pending The Adjudication of Defendants' Motion To Dismiss Based On A Controlling Arbitration Provision ..... 5

II. The Defendants Are Entitled To Jurisdictional Discovery ..... 10

CONCLUSION..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*,
No. 19 CIV. 8692 (AKH), 2019 WL 5257995 (S.D.N.Y. Oct. 17, 2019)................................8

*Diaz v. Mich. Logistics Inc.*,
167 F. Supp. 3d 375 (E.D.N.Y. 2016) ..........................................................................7

*Gomes v. Angop*,
No. 11-CV-0580 (DLI) (JO), 2011 U.S. Dist. LEXIS 53259 (E.D.N.Y. May 18, 2011) ..........................................................................................6, 7, 10

*Greystone Bank v. Tavarez*,
No. 09-CV-5192 (SLT), 2010 WL 3325203 (E.D.N.Y. Aug. 16, 2010)................................12

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009)..........................................................................10

*In re Magnetic Audiotape Antitrust Litig.*,
334 F.3d 204 (2d Cir. 2003)...........................................................................10, 12

*In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56 (2d Cir. 1998)..........................................................................11

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
500 F.3d 111 (2d Cir. 2007)..........................................................................8

*Liang v. Home Reno Concepts LLC*,
17-CV-3503-SJB, 2018 WL 4954162 (E.D.N.Y. Oct. 12, 2018)..........................................11

*Maresca v. La Certosa*,
172 A.D.2d 725 (2d Dep't 1991) ..........................................................................7

*Meridian Autonomous Inc. v. Coast Autonomous LLC*,
No. 17-CV-5846 (VSB), 2018 WL 4759754 (S.D.N.Y. Sept. 30, 2018) ................................7

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)..........................................................................7

*Thomas v. New York City Dep't of Educ.*,
No. 09-CV-5167 (SLT), 2010 WL 3709923 (E.D.N.Y. Sept. 14, 2010)................................10

*United Food & Commercial Workers Union v. Center-Mark Properties Meriden Square, Inc.*,
30 F.3d 298 (2d Cir. 1994)..........................................................................12

*Valle v. ATM Nat'l, LLC*,
No. 14-cv-7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015)........................................9

*WTA Tour, Inc. v. Super Slam Ltd.*,
339 F. Supp. 3d 390 (S.D.N.Y. 2018)........................................................................8, 9

**Statutes**

28 U.S.C. § 636........................................................................................................4

28 U.S.C. § 636(b)(1) ..............................................................................................1

**Rules**

Fed. R. Civ. P. 72(a) ...........................................................................................1, 4

Defendants Larry and Mindy Spiewak ("Defendants") respectfully submit these objections pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(a) to Magistrate Bulsara's June 5, 2020 Order ("Magistrate's Order") (1) requiring Defendants to participate in discovery on the merits of this action notwithstanding that a binding arbitration clause governs this dispute, and that Defendants intended to move to dismiss on the basis of that arbitration clause, and (2) denying Defendants' request for jurisdictional discovery.

**PRELIMINARY STATEMENT**

Plaintiff's purported shareholder derivative claims are governed by a binding arbitration provision that covers all disputes "relating to or arising out of" the Shareholder Agreement, and Defendants have sought leave to move to dismiss on that basis, among others. Defendants therefore sought to prevent improper and unnecessary merits discovery until that motion was resolved, so they would not be forced to engage in time-consuming and expensive litigation of claims that Plaintiff is required to arbitrate. The Magistrate seemingly ignored the controlling arbitration provision, and issued an expedited discovery order that requires Defendants to complete a substantial portion of merits document discovery by August 1, 2020. The Magistrate's Order was contrary to well established law, and if allowed to remain in place, it will irreparably harm Defendants by subjecting them to a lengthy and burdensome discovery process that they sought to avoid by agreeing to a negotiated arbitration provision.

Second, independent of the arbitration clause, as a garden-variety two person shareholder dispute of a small, closely held, Brooklyn based-company, this case does not belong in federal court. In fact, Plaintiff only brought this case in federal court when a related state-court action in Kings County began producing order after order that were not favorable to her position. She filed this lawsuit as a blatant exercise of forum shopping, and to do so, she had to conjure up a basis for federal jurisdiction. She alleges that she also has diversity jurisdiction because she is

purportedly domiciled in New Jersey, but Defendants, who have known Plaintiff for forty years, know that she lives in Brooklyn, New York, and only has a vacation home in New Jersey. To put in plainly, Plaintiff knowingly misrepresented grounds for diversity jurisdiction because she knows that there is no proper federal question jurisdiction. Defendants accordingly requested jurisdictional discovery that would be narrowly targeted to addressing the issue of Plaintiff's domicile. The Magistrate's Order, however, denied the request for such jurisdictional discovery, and instead stated that Plaintiff had established federal jurisdiction by merely pleading a civil RICO claim. Plaintiff's civil RICO claims are frivolous state-law claims disguised as federal claims for the sole purpose of attempting to obtain federal question jurisdiction, and will not survive a motion to dismiss. Regardless, Defendants are entitled to jurisdictional discovery because Plaintiff alleged in her complaint that she has diversity jurisdiction, and Defendants are entitled to challenge that contention in one motion to dismiss rather than bringing it piecemeal. The Magistrate's Order erred as a matter of law by denying the jurisdictional discovery that would establish that Plaintiffs have no basis to be in federal court.

Therefore, this Court should reverse the Magistrate's Order and issue an order (a) delaying any merits discovery pending the outcome of Defendants' motion to dismiss, and (b) allowing Defendants to take expedited jurisdictional discovery in aid of their motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Florence Shamah and Mr. Spiewak have been business partners for almost forty years in a business called Kwik Ticket. Dkt. No. 41. Mr. Spiewak is Kwik Ticket's president, and has run the company and its daily operations since he founded the company. Mrs. Shamah's husband, David, who passed away nearly two decades ago, was a non-operating partner of Mr. Spiewak. When David passed, his interests went to Florence. In September 2019, Isaac Shamah (Florence's son), began demanding a role in running Kwik Ticket. When he was denied that

role, Isaac Shamah undertook a pattern of interfering with the company's operations, including going so far as to contact Kwik Ticket's bank and pretend to be Larry Spiewak in order to have company financial information improperly redirected to his mother's residence in Brooklyn (notably, not New Jersey). *Id.*

To stop Isaac Shamah's interference, the company initiated an action in January 2020 in the New York State Supreme Court, Kings County, Case No. 0501076/2020, against Florence and Isaac Shamah, and obtained a TRO enjoining Isaac Shamah's continued interference with Kwik Ticket's operations. See Dkt. No. 15-2. That TRO was subsequently affirmed by the Second Department, and by the trial court following an additional lengthy hearing before Judge Martin. On May 5, 2020, the Kings County trial court entered a preliminary injunction prohibiting Isaac Shamah's continued interference with Kwik Ticket. See Case No. 0501076/2020, Dkt. No. 31. So far, the state court litigation has produced a total of four (4) rulings in favor of Mr. Spiewak, and none in favor of Florence or her son.

Meanwhile, in retaliation (and in a blatant display of forum shopping), Florence Shamah initiated the present action in federal court on March 4, 2020, alleging that Mr. Spiewak misappropriated funds from Kwik Ticket. In order to obtain federal court jurisdiction, and hoping it would prevent her action from being consolidated with the pending proceeding in Kings County, Plaintiff asserted entirely meritless civil RICO claims. Compl. ¶¶ 43-54. Plaintiff also goes to great lengths in the complaint to claim that diversity jurisdiction exists, alleging that she is domiciled in Long Branch, New Jersey and that Defendants live in New York.

On March 18, 2020 Plaintiff moved for a temporary restraining order and preliminary injunction to enjoin Defendants from "making and implementing decisions" on behalf of Kwik

Ticket without the consent of herself or her son Isaac. Dkt. 32 at 2. Plaintiff also sought control over the company's finances. *Id.* This Court, however, denied Plaintiff's motion. *Id.* It found that Plaintiff faced no irreparable harm, and also observed that Plaintiff only sought relief from this Court "after she received an unfavorable decision in state court." Dkt. 32 at 2-5. The Court further found that the injunctive relief sought by the Plaintiff would impermissibly interfere with the state court orders, in violation of the Anti-Injunction Act and Rooker-Feldman doctrine.[1]

After this Court denied Plaintiff's request for a preliminary relief, Defendants began to set the groundwork for their anticipated motion to dismiss. Specifically, they sought jurisdictional discovery to show that Plaintiff is domiciled in New York, and not New Jersey. Dkt. No. 36. Defendants also sought a stay of merits discovery until their anticipated motion was adjudicated, because Plaintiff's claims are subject to a binding arbitration agreement. Dkt. No. 42 at 1, 3.[2] Plaintiff opposed jurisdictional discovery and asked the Court to enter a discovery schedule with the first stage of merits discovery to be completed by July 20. Dkt. Nos. 38, 40.

The Magistrate held a hearing on June 5, 2020, and rejected Defendants' request for jurisdictional discovery. June 5, 2020 Hearing Tr. 7:17-17:13 (attached as Ex. 1). The Magistrate also declined to delay the start of merits discovery pending a resolution of

---

[1] Plaintiff's improper tactics continued after the denial of her request for injunctive relief. After Defendant signed and returned a waiver of service form on April 20, 2020, Plaintiff repeatedly sent process servers who were not wearing any protective equipment, to personally serve the Defendants at their home, including on Passover knowing that Defendants were observant and celebrating, and that such attempted service was against the law. Dkt. No. 33. Plaintiff did not stop with this threatening behavior until ordered by the Court.

[2] The Magistrate also seemingly took the position that Defendants did not move for a stay of discovery, Tr. 15:10-15, but Defendants' pre-motion submissions clearly express their request that merits discovery should not take place until after the motion to dismiss is adjudicated. See Dkt. No. 41 ("The Court should also postpone merits discovery because the Kwik Ticket Shareholders' Agreement has a broad arbitration provision . . . Defendants plan to move to dismiss on this basis, and should not be compelled to engage in merits discovery in federal court before this threshold issue is resolved as well. *See Valle v. ATM Nat'l, LLC*, No. 14-cv-7993 (KBF), 2015 WL 413449, *1 (S.D.N.Y. Jan. 30, 2015) (staying discovery of all kind while a motion to compel arbitration was pending)").

Defendants' motion to dismiss based on the arbitration provision in the Shareholders' Agreement. Ex. 1 at 38:20-39:2. The Magistrate instead ordered that Defendants complete the first stage of merits discovery by August 1, 2020. *See* Magistrate's Order. Defendants object to the denial of both of their requests.

## LEGAL STANDARD

The district court reviews a magistrate judge's order resolving non-dispositive issues under the "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636.

## ARGUMENT

### I. The Magistrate Judge Should Have Stayed Merits Discovery Pending The Adjudication of Defendants' Motion To Dismiss Based On A Controlling Arbitration Provision

As more fully set forth in Defendants' letter motion seeking a pre-motion conference for a motion to dismiss, Dkt. No. 46, this shareholder derivative action should be dismissed because Plaintiff's claims are governed by a broad arbitration provision in the controlling Shareholders' Agreement, which requires arbitration for "any dispute relating to or arising out of this agreement," Shareholders' Agreement § 13, Dkt. No. 12-2. Given that this dispute must be resolved in arbitration, Defendants sought to have all merits discovery delayed until after their motion to dismiss was decided. Dkt. No. 41 at 1 ("Allowing merits discovery would interfere with the arbitrator's jurisdiction over this dispute.")

The Magistrate, however, rejected this request, and instead ordered an expedited discovery schedule requiring that a substantial portion of merits document discovery be **completed** by August 1, 2020. *See* Magistrate's Order. Although the discovery is nominally "directed towards evaluating the possibility of settlement," Plaintiff's counsel made clear at the initial conference that he would seek extremely broad discovery: "[W]e're looking for things like bank statements, invoices, communications, you know, sort of the gamut of corporate documents that would enable

us to evaluate our claims, both regarding the merits, which we believe we're strong on, as well as damages." Ex. 1 at 25:25-26:4. True to his word, on June 19, 2020, Plaintiff issued her first set of document requests, which seek **nearly every business record in Kwik Ticket's possession for a period of seventeen (17) years including:**

- Documents concerning all federal, state, and local tax returns prepared for and/or filed on behalf of Kwik Ticket.
- Documents concerning all statements of all bank accounts, brokerage accounts and other financial accounts, and all cancelled checks for any of these accounts, in which Kwik Ticket has or had an interest, individually or jointly.
- Invoices concerning any check made payable to "cash."
- Documents concerning invoices in the name of (a) PMX Freight Systems; (b) Basic Office Essentials; (c) Mega Plastic Group; (d) Morris Trucking; and (e) Blanca Cleaners.
- All data from any accounting or bookkeeping software used by Kwik Ticket to track invoices, payments, and/or expenses.
- Documents, including but not limited to W-2s, 1099s, and K-1s, evidencing or concerning all distributions, fees, wages, commissions, salaries, draws, and fringe benefits, or bonuses paid by Kwik Ticket.
- Documents concerning Kwik Ticket financial statements, including without limitation profit and loss statements and balance sheets.
- Documents concerning accounting work papers for Kwik Ticket.
- Documents concerning communications between Kwik Ticket (including any of its employees) and Joel Boikess or any other accountant.

*See* Plaintiff's First Request to Defendants for Production of Documents, attached as **Exhibit 2.** As discussed below, forcing a party to litigate in court, when that party is entitled to arbitration constitutes irreparable harm. The Magistrate's Order erred as a matter of law when it disregarded the binding arbitration provision in the Shareholders' Agreement, and forced Defendants to litigate in federal court.

In determining whether to stay discovery pending a motion to dismiss, courts consider the following factors: "(1) whether there has been a strong showing that the claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay: (4) the nature and complexity of the action; and (5) the posture of the litigation." *Gomes v. Angop*, No. 11-CV-0580 (DLI) (JO), 2011 U.S. Dist. LEXIS 53259, at *2-3 (E.D.N.Y. May 18, 2011) (granting stay). "A stay of discovery pending resolution of a potentially dispositive motion is appropriate where the motion appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law." *Id.* These factors all strongly weigh in favor of a stay.

**First,** as more fully addressed in Defendants' Pre-Motion letter, Dkt. No. 46, Defendants' motion to dismiss premised on the binding arbitration provision is based on "substantial grounds" or at a minimum, it is not "without foundation in law." The Kwik Ticket Shareholders' Agreement contains a broad and unambiguous arbitration provision mandating arbitration for "any dispute relating to or arising out of this agreement." Dkt. 12-2 at ¶ 13. Plaintiff's ability to sue as a shareholder is established by the Shareholders' Agreement. Furthermore, by alleging that Mr. Spiewak engaged in a pattern of fraud and self-dealing, and by seeking to enjoin Defendants from "taking any actions that are not properly authorized by the Company," Plaintiff's claims plainly implicate the terms of the Shareholders' Agreement. *See, e.g.*, *Maresca v. La Certosa*, 172 A.D.2d 725, 726 (2d Dep't 1991) (requiring arbitration for claims about waste and conversion of corporate assets when the shareholders' agreement mandated arbitration for "[a]ny dispute or controversy between the parties relating to or arising out of the affairs of the Corporation or this Agreement"). Accordingly, Defendants have a substantial likelihood of prevailing on their motion to dismiss. *See Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17-CV-5846 (VSB), 2018 WL

4759754, at *5 (S.D.N.Y. Sept. 30, 2018) (dismissing claims because they were subject to arbitration) (citing *Nicosia v. Amazon.com, Inc.,* 834 F.3d 220, 230 (2d Cir. 2016)).[3]

**Second,** Plaintiff is seeking extremely broad discovery that encompasses nearly every business record in Kwik Ticket's possession for a period of seventeen (17) years. *See* Exhibit 2.

**Third,** Defendants will suffer irreparable injury if they are forced to litigate claims that should be resolved through arbitration. *See WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 406 (S.D.N.Y. 2018) ("Petitioners will suffer irreparable harm if they are forced to litigate rather than arbitrate this dispute. Even if they ultimately prevail in the foreign proceedings, they will have lost the very benefit of the arbitration clause, which was to avoid litigation."); *cf Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*, No. 19 CIV. 8692 (AKH), 2019 WL 5257995, at *7 (S.D.N.Y. Oct. 17, 2019) ("It is undeniable that dragging Petitioners into litigation in a court other than the court having exclusive jurisdiction under the Purchase Agreement constitutes irreparable harm.") Indeed, one of the primary rationales for choosing arbitration over litigation is to avoid the burden, cost, and expense of the more liberal and expansive discovery afforded by the Federal Rules. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 126 (2d Cir. 2007) (holding that "the twin goals of arbitration" are "settling disputes efficiently and avoiding long and expensive litigation"). By ordering Defendants to engage in discovery in federal court prior to a ruling on Defendants' motion to dismiss, the Magistrate denied Defendants one of the key benefits of arbitration.

Moreover, if Defendants participate in the discovery process, and issue affirmative discovery requests, Plaintiffs will undoubtedly argue that Defendants have waived their right to

[3] Plaintiff is also required to engage in arbitration with Mrs. Spiewak because Plaintiff's claims against Mrs. Spiewak are wholly intertwined with the Shareholders' Agreement and are derivative of, and relate to, Mr. Spiewak's purported misconduct. *See Diaz v. Mich. Logistics Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (non-signatory could bind the plaintiff to an arbitration agreement because the allegations were factually intertwined)

arbitrate. Defendants are thus faced with an impossible choice: participate in discovery and potentially waive their right to arbitrate, or refuse to participate, and prejudice their position in the federal lawsuit.

Plaintiff on the other hand, will not suffer any prejudice if discovery is stayed pending adjudication of the motion. In denying Plaintiff's request for a preliminary injunction, this Court already held that there was no urgency to Plaintiff's claims, and that Plaintiff had delayed in bringing her claims until after she lost several times in state court, stating:

> If Plaintiff sought to prevent some injury that followed from the expiration of the 2019 resolution, she fails to adequately explain why she waited nearly half a year *after* the resolution expired to do so. . . . Notably, Plaintiff brought this suit (and moved for injunctive relief) only after Kwik Ticket filed its own complaint in New York state court and successfully moved for [a] TRO against Plaintiff's son and attorney-in-fact, Issac Shamah. That Plaintiff failed to seek injunctive relief until after she received an unfavorable decision in state court further "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.

*See* Memorandum and Order at 4-5, Dkt. No. 32. Here too, delaying discovery until after the adjudication of Defendants' motion to dismiss will not prejudice Plaintiff.

**Fourth,** Plaintiff has asserted wide-ranging RICO, breach of fiduciary and conversion claims that relate to a forty-year partnership. Discovery in this case will be complex, and will involve many non-party Shamah family members who were involved in Kwik Ticket. Defendants should not be forced to undertake the burden of this complex discovery until the motion to dismiss is adjudicated. This is particularly true where, as here, the proper forum for this dispute is arbitration, which allows for a substantially more limited scope of discovery.

**Fifth,** this action is at its very earliest stages, and the Plaintiff will not be prejudiced if discovery is stayed until the motion to dismiss is adjudicated.

Finally, although this factor is not expressly referenced, it must be noted that the public interest strongly favors the enforcement of arbitration clauses. *See WTA Tour, Inc*, 339 F. Supp. 3d at 406 (enjoining foreign litigation subject to an arbitration clause while holding that "enforcing the arbitration clause supports the strong federal policy in favor of arbitration."). The Magistrate's Order, however, requires Defendants to engage in unnecessary discovery in federal court, which undermines the purpose and enforceability of such arbitration clauses.

In sum, all the factors favor delaying merits discovery until after Defendants' motion to dismiss is adjudicated, and the Magistrate erred by ordering discovery to go forward. *See Valle v. ATM Nat'l, LLC*, No. 14-cv-7993 (KBF), 2015 WL 413449, *1 (S.D.N.Y. Jan. 30, 2015) (staying discovery of all kind while a motion to compel arbitration was pending); *Gomes,* 2011 U.S. Dist. LEXIS 53259, at *2-3 (granting stay); *Thomas v. New York City Dep't of Educ.*, No. 09-CV-5167 (SLT), 2010 WL 3709923, at *3 (E.D.N.Y. Sept. 14, 2010) (granting stay).

## II. The Defendants Are Entitled To Jurisdictional Discovery

The Magistrate also erred as a matter of law in denying Defendants' request for jurisdictional discovery, which would allow Defendants to quickly and efficiently resolve this case on a motion to dismiss – even if the branch of the motion relating to the arbitration provision is denied. *See generally In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (reversing district court's denial of jurisdictional discovery that was going to be used in a motion to dismiss).

Plaintiff's complaint asserts two bases of federal jurisdiction: (1) subject matter jurisdiction over the two RICO claims, with supplemental jurisdiction over the other state-law claims; and (2) diversity jurisdiction because Plaintiff allegedly lives in New Jersey, while the other parties are all from New York. Compl. ¶¶ 4, 5. As discussed at greater length in Defendants' Pre-Motion Letter, Dkt. No. 46, Defendant intends on attacking both bases of jurisdiction – *i.e.,* the RICO claim and

diversity, but Defendants cannot adequately attack Plaintiff's assertion of diversity jurisdiction without discovery regarding her domicile.[4]

It is settled law that Defendants are entitled to jurisdictional discovery because Plaintiff has alleged diversity jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208. The Magistrate, however, denied Defendants' request for jurisdictional discovery, reasoning that Plaintiff's RICO claims conferred federal subject matter jurisdiction, which would continue even after the RICO claims are dismissed, and therefore, discovery regarding the Plaintiff's claims of diversity jurisdiction was irrelevant and unnecessary. *See* Ex. 1 at 9:9-25 (Magistrate: "The plaintiff has made a RICO claim. It may be the most frivolous claim that may be dismissed. The Court has subject matter jurisdiction. . . . But what is the point of doing jurisdictional discovery first in the face of a RICO claim, and why does that mean that there's no subject matter jurisdiction.")

The Magistrate's Order erred as a matter of law. Given the proclivity to assert RICO claims solely to obtain federal jurisdiction, the Second Circuit has recognized that it is "proper" to decline to exercise supplemental jurisdiction over state-law claims once the RICO claims are dismissed. *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[T]he district court properly declined to exercise supplemental jurisdiction over the state law claims after dismissing the RICO action."). This principle is well established in the law, and it is one that the Magistrate has recognized and applied in other cases. *Liang v. Home Reno Concepts LLC*, 17-CV-3503-SJB,

---

[4] Plaintiff's garden-variety shareholder dispute dressed up as a RICO claim will not survive a motion to dismiss. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 485-99 (S.D.N.Y. 2009) (dismissing RICO claim based on allegation that employees embezzled company funds for personal expenses). "RICO does not . . . federalize garden-variety state common-law causes of action," and as a result, such claims face a "grim statistical record documenting plaintiffs' limited success rate in RICO litigation." *Id.* at 479-83 (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007, and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

2018 WL 4954162, at *10 (E.D.N.Y. Oct. 12, 2018) (Bulsara, J.) (where the RICO claim is dismissed, [] declining to exercise supplemental jurisdiction over remaining state or common law claims is the proper course."). Here however, the Magistrate held that because the Court could in theory assert supplemental jurisdiction after the RICO claims were dismissed, there was an alternate basis for federal jurisdiction, and discovery regarding diversity jurisdiction was improper.

This Order was wrong as a matter of law because it would be improper for the Court to assert supplemental jurisdiction over the state law claims after the RICO claim is dismissed. And by denying Defendants' request for jurisdictional discovery, the Magistrate denied Defendants their right to challenge Plaintiff's jurisdictional allegations in its motion to dismiss at the outset of the case. Such an order is wrong as a matter of law. See *In re Magnetic Audiotape*, 334 F.3d at 208. Jurisdictional discovery must be allowed for the parties to resolve their initial jurisdictional disputes when a plaintiff's "allegations of jurisdictional facts are challenged by [its] adversary in *any* appropriate manner . . . ." *United Food & Commercial Workers Union v. Center-Mark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (emphasis added); *see also Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT), 2010 WL 3325203, at *2 (E.D.N.Y. Aug. 16, 2010) (recognizing that "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion").

The Magistrate's decision is also bad policy, as it rewards Plaintiff for asserting frivolous RICO claims in order to obtain federal jurisdiction. At this Court knows, Plaintiff only filed this lawsuit after she and her son repeatedly lost in state court. Now, in a blatant example of forum shopping, she added two meritless RICO claims to her lawsuit just to obtain a temporary basis for federal jurisdiction. Had Plaintiff not asserted this frivolous RICO claim, there would be no question that jurisdictional discovery is permitted. By denying Defendants the opportunity to

conduct jurisdictional discovery, the Magistrate effectively rewarded Plaintiff for their shameless jurisdictional manipulation.

Overall, governing case law holds that jurisdictional discovery is appropriate prior to a motion to dismiss. The case law holds that such fundamental jurisdictional issues should be properly prepared for resolution in a motion to dismiss through jurisdictional discovery. That is all the Defendants seek here: an opportunity to conduct limited discovery showing that Plaintiff lives in New York, not New Jersey. Thus, the Magistrate erred in holding that Defendants were not entitled to jurisdictional discovery prior to a briefing on a motion to dismiss.

**CONCLUSION**

Defendants respectfully ask this Court to reverse the Magistrate's Order and issue an order (a) staying any merits discovery pending the outcome of Defendants' motion to dismiss, and (b) allowing Defendants to take expedited jurisdictional discovery in aid of their motion to dismiss.

Dated: New York, New York
June 19, 2020

By: *___/s/ Samuel Kadosh___*
Joseph Tuso*
Samuel Kadosh
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
Fax. (212) 521-5450
*Attorneys for Defendants*
*Larry Spiewak and Mindy Spiewak*

* *pro hac vice pending*