UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KWIK TICKET INC., by its 50% owner
FLORENCE SHAMAH,

                                        Plaintiff,

        -against-

LARRY SPIEWAK et al.,

                                        Defendants.

Case No. 20-cv-01201 (FB) (SJB)

**DEFENDANTS LARRY SPIEWAK, MINDY SPIEWAK,
AND MALKAH JACOBOVITS'S
MEMORANDUM OF LAW IN SUPPORT
OF THEIR APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION STAYING THIS PROCEEDING AND COMPELLING
ARBITRATION**

Reed Smith LLP
599 Lexington Avenue
New York, NY  10022
Tel. (212) 521-5400
*Attorneys for Defendants*
*Larry Spiewak, Mindy Spiewak, and Malkah Jacobovits*

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................... 2

I.   Mr. Spiewak Is The President And Sole Operating Partner Of Kwik Ticket ...................... 2

II.  Plaintiff's Son Tried Taking Over Kwik Ticket, But Kwik Ticket Obtained A TRO In State Court That Barred Plaintiff's Son From Further Involvement In The Company ........ 3

III. Plaintiff Responded By Filing This Action In Federal Court And Seeking A TRO That Would Give Her Control Of Kwik Ticket, But Judge Brodie And Judge Block Denied Her That Relief ................................. 4

IV.  Magistrate Judge Bulsara Issued Orders Requiring Defendants To Comply With Plaintiff's Excessive Discovery Demands .................................. 5

LEGAL STANDARD............................................................................. 9

ARGUMENT ......................................................................................... 9

I.   Defendants Will Prevail On The Merits Of Their Motion To Stay And To Compel Arbitration Under Sections 3 And 4 Of The FAA ................................... 9

   A.   The Shareholders' Agreement Contains A Valid Arbitration Clause That Makes Plaintiff's Claims Against Mr. Spiewak Arbitrable.............................. 9

   B.   Equitable Principles Make Plaintiff's Claims Against Mrs. Spiewak And Ms. Jacobovits Arbitrable ................................. 12

   C.   Plaintiff's Argument That Defendants Waived Their Right To Arbitrate Has No Merit................................. 14

      1.   The State Court Action Brought By Kwik Ticket Against Isaac Shamah Does Not Constitute A Waiver Of Defendants' Right To Arbitrate ........................... 15

      2.   A Statement Purportedly Made By Kwik Ticket's Attorney In An Email Exchange Related To The State Court Action Does Not Constitute Waiver................................. 16

      3.   Defendants' Request for Jurisdictional Discovery Does Not Constitute Waiver ......... 17

II.  Defendants Will Suffer Irreparable Harm If These Proceedings Are Not Stayed Because They Will Be Forced To Litigate Claims That Are Subject To Arbitration ........ 18

CONCLUSION...................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acquaire v. Canada Dry Bottling*,
  906 F. Supp. 819 (E.D.N.Y. 1995) ...................................................................12, 14

*Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*,
  97 F. Supp. 2d 320 (E.D.N.Y. 2000) .....................................................................17

*Arnold v. Arnold Corp.-Printed Commc'ns for Bus.*,
  920 F.2d 1269 (6th Cir. 1990) ...............................................................................12

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................................10

*Choctaw Generation LP v. Am. Home Assurance Co.*,
  271 F.3d 403 (2d Cir. 2001)....................................................................................13

*CIGNA HealthCare of St. Louis, Inc. v. Kaiser*,
  294 F.3d 849 (7th Cir. 2002) ..................................................................................18

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
  58 F.3d 16 (2d Cir. 2005) .......................................................................................11

*Diaz v. Mich. Logistics Inc.*,
  167 F. Supp. 3d 375 (E.D.N.Y 2016) ................................................................13, 14

*EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*,
  No. 3:10-CV-1489 WWE, 2012 WL 5878657 (D. Conn. Nov. 21, 2012) .............15

*Emilio v. Sprint Spectrum L.P.*,
  No. 08 CV 7147(BSJ), 2008 WL 4865050 (S.D.N.Y. Nov. 6, 2008) *aff'd*, 315
  F. App'x 322 (2d Cir. 2009) ...................................................................................18

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  131 F. Supp. 2d 540 (S.D.N.Y. 2001).................................................................19, 20

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005)....................................................................................17

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010).................................................................................................10

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000)...................................................................................................10

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)..................................................................................10

*Kamin v. Koren*,
621 F. Supp. 444 (S.D.N.Y. 1985)..................................................................16, 17

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)..................................................................................10

*Klepper v. SLI, Inc.*,
45 Fed. App'x 136 (3d Cir. 2002)..........................................................................19

*Lozada v. Progressive Leasing*,
No. 15-cv-2812 (KAM)(JO), 2016 WL 3620756 (E.D.N.Y. June 28, 2016)........................11

*Maresca v. La Certosa*,
172 A.D.2d 725 (2d Dep't 1991)............................................................................12

*Merril Lynch, Pierce, Fenner & Smith Inc. v. Doe*,
868 F. Supp. 532 (S.D.N.Y. 1994)........................................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................................10

*Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*,
No. 16-CV-5699 (JGK), 2016 WL 4204066 (S.D.N.Y. Aug. 4, 2016)................................18

*NXIVM Corp. v. Ross Inst.*,
364 F.3d 471 (2d Cir. 2004)....................................................................................9

*Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
No. 02 CIV. 9369 (DFE), 2003 WL 23641529 (S.D.N.Y. June 4, 2003) *aff'd*
369 F.3d 645 (2d Cir. 2004)..................................................................................18

*PPG Indus., Inc. v. Webster Auto Parts Inc.*,
128 F.3d 103 (2d Cir.1997)..................................................................................14

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)..................................................................................13

*Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*,
962 F. Supp. 385 (S.D.N.Y. 1997)........................................................................18

*Reuters, Ltd. v. United Press Int'l, Inc.*,
903 F.2d 904 (2d Cir. 1990)..................................................................................18

*Rush v. Oppenheimer & Co.*,
779 F.2d 885 (2d Cir. 1985)..................................................................................15

*S & R Co. of Kingston v. Latona Trucking, Inc.*,
   159 F.3d 80 (2d Cir.1998)...................................................................................15

*Shetiwy v. Midland Credit Mgmt.*,
   959 F. Supp. 2d 469 (S.D.N.Y. 2013)..................................................................11

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*,
   190 F. Supp. 2d 577 (S.D.N.Y. 2002)....................................................................9

*Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*,
   858 F.2d 648 (11th Cir. 1988) .............................................................................19

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
   310 F.3d 102 (2d Cir.2002)..................................................................................14

*WTA Tour, Inc. v. Super Slam Ltd.*,
   339 F. Supp. 3d 390 (S.D.N.Y. 2018)..............................................................18, 19

*Wu v. Pearson Educ. Inc.*,
   No. 09 Civ. 6557 (RJH), 2010 WL 3791676 (S.D.N.Y. Sept. 30, 2010) ..............16

**Statutes**

9 U.S.C. § 3......................................................................................................9, 10, 11

9 U.S.C. § 4......................................................................................................9, 10, 11

**Rules**

Fed. R. Civ. P. 65(a), (b)...............................................................................................9

Defendants Larry Spiewak, Mindy Spiewak, and Malkah Jacobovits ("Defendants") respectfully submit this memorandum of law in support of their application for a temporary restraining order and preliminary injunction to stay this proceeding pending arbitration and to compel arbitration of Plaintiff's claims.

## PRELIMINARY STATEMENT

Since the initiation of this litigation, Defendants have consistently maintained that these proceedings are subject to the binding arbitration clause in the Shareholders' Agreement that formed Kwik Ticket, Inc. ("Kwik Ticket"). The Court has scheduled a pre-motion conference on Defendants' anticipated motion to compel arbitration and to dismiss for November 12, 2020. However, in the interim, Plaintiff has aggressively sought to litigate her claims in this court, all before Defendants' motion to compel arbitration and dismiss could be heard, let alone decided. Among other acts, Plaintiff has sought discovery of seventeen years of Kwik Ticket's business records, and on September 1 2020, and again on September 17, 2020, Magistrate Judge Bulsara ordered the production of these documents and threatened Defendants with sanctions if they did not produce the requested business records.

However, Plaintiff's claims are subject to arbitration, and Defendants should not be compelled to participate in this federal litigation. The Kwik Ticket Shareholders' Agreement contains a broad and unambiguous arbitration provision stating: "Any dispute relating to or arising out of this agreement shall be resolved by arbitration before three arbitrators in the City of New York under the rules then obtaining of the American Arbitration Association." Plaintiff's shareholder derivative claims, which allege that Mr. Spiewak engaged in a pattern of fraud and self-dealing, and which seek to enjoin Defendants from "taking any actions that are not properly authorized by the Company," plainly implicate the Shareholders' Agreement. Arbitration of the claims against Mr. Spiewak is thus mandatory. Additionally, the claims against Mrs. Spiewak and

Ms. Jacobovits are entirely derivative of the claims against Mr. Spiewak, and should also be arbitrated.

To allow for the arbitration of Plaintiff's claims, Defendants bring this application for a temporary restraining order and preliminary injunction that would stay this proceeding pending arbitration and compel arbitration of Plaintiff's claims.  The requirements for a temporary restraining order and preliminary injunction are easily satisfied here: this dispute is plainly encompassed by the broad arbitration clause in the Shareholders' Agreement, and Defendants would suffer irreparable harm if they are required to continue to litigate in federal court. Defendants had intended to move to stay these proceedings through a normal notice and briefing schedule, but Magistrate Judge Sanket J. Bulsara has now issued several discovery orders that must be immediately stayed, or else Defendants' right to arbitrate every aspect of their claims – including which documents must be produced – will be irreparably harmed.  Based on this urgency, Defendants bring this application to stay this proceeding pending arbitration and to compel arbitration of Plaintiff's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **Mr. Spiewak Is The President And Sole Operating Partner Of Kwik Ticket**

Mr. Spiewak is Kwik Ticket's president and has been the sole operating partner of the company and its daily operations.  Dkt. No. 21 (Decl. of Larry Spiewak) at ¶¶ 1-11.  He founded the company approximately forty years ago, and has grown it into a successful business with approximately $8.2 million in gross revenue in 2019.  *Id.* at ¶ 5.

Plaintiff's husband was a non-operating partner of Kwik Ticket.  *Id.* at ¶ 9.  When Plaintiff's husband passed away nearly two decades ago, his interest passed to Plaintiff.  *Id.* Plaintiff, like her husband, had never been involved in running the operations of Kwik Ticket and had never been involved in its management.  *Id.* at ¶¶ 6-10.  Plaintiff's son, Isaac Shamah, was

- 2 -

similarly not involved in the management and operations of the company, and he was never an officer, director, manager, or employee of Kwik Ticket.  *Id.* at ¶ 11.

**II.   Plaintiff's Son Tried Taking Over Kwik Ticket, But Kwik Ticket Obtained A TRO In State Court That Barred Plaintiff's Son From Further Involvement In The Company**

In September 2019, Isaac Shamah (Plaintiff's son), began demanding that he be permitted to "run" Kwik Ticket.  *Id.* at ¶¶ 12-34.  When he was denied such a role, Isaac Shamah began a pattern of interfering with the company's operations, including by contacting Kwik Ticket's bank and impersonating Mr. Spiewak in order to improperly redirect confidential bank information to his mother's residence.  *Id.*

To stop Isaac Shamah's interference, on January 15, 2020, Kwik Ticket, through its counsel Goldberg, Weg and Markus PLLC, commenced an action against Isaac and Florence Shamah in the Supreme Court of the State of New York, Kings County, titled *Kwik Ticket Inc. v. Isaac Shamah and Florence Shamah*, Index No. 501076/2020 (the "State Court Action").  *Id.* at ¶ 35. The complaint sought a declaration from the state court that Isaac Shamah "has no authority to act on behalf of Kwik Ticket and is not the CEO of Kwik Ticket," along with a permanent injunction that would prevent Isaac Shamah from "entering Kwik Ticket's offices" and "taking any action on behalf of Kwik Ticket."  Dkt. No. 15-1 at ¶¶ 71, 77.  Kwik ticket simultaneously sought a temporary restraining order ("TRO") seeking the same relief.  Dkt. No. 20 at ¶ 36; Dkt. No. 15-2.

On January 15, 2020, the Honorable Justice Larry D. Martin of the Supreme Court of New York, Kings County, granted the TRO.  Dkt. No. 20 at ¶ 37, Ex. 3.  However, even the State Court TRO did not deter Isaac.  *Id*. at ¶ 38.  On January 16, 2020, the very next day, after he was served with the TRO, Isaac intentionally violated the State Court TRO by accessing a Kwik Ticket bank account to transfer over $15,300 from Kwik Ticket's account to pay his children's private school tuition at the Magen David School in Brooklyn.  *Id*. at ¶ 38, Ex. 4.  For good measure, on the same

day, Isaac again knowingly and intentionally violated the State Court TRO and charged nearly $1,000 in Knick's basketball tickets to the company credit card. *Id*. at ¶ 39, Ex. 5.

In an attempt to get yet another bite at the apple, Isaac then filed an "emergency" appeal of the state court TRO to the Appellate Division, Second Department. *Id*. at ¶ 40. Following extensive argument, the Appellate Division denied the Shamahs' appeal on January 22, 2020, leaving the State Court TRO in place. *Id.*, Ex. 3. More than a month later, on February 26, 2020, following another lengthy argument before Justice Martin in Kings County, where the Shamahs yet again raised these fabricated allegations of theft, the court extended the TRO against Isaac Shamah. *Id*. at ¶ 41, Ex. 6.

Meanwhile, on February 25, 2020, Kwik Ticket discontinued the action against Florence Shamah. *See* Dkt. No. 43 at 3. As a result, the action was "no longer framed as corporation versus shareholder," but was instead a suit brought by the Kwik Ticket against non-owner Isaac Shamah. *See id.*

## III.   Plaintiff Responded By Filing This Action In Federal Court And Seeking A TRO That Would Give Her Control Of Kwik Ticket, But Judge Brodie And Judge Block Denied Her That Relief

Meanwhile, in retaliation—and in a transparent display of forum shopping—Florence Shamah initiated this action on March 4, 2020, against the Larry and Mindy Spiewak, Malkah Jacobovits, and Joel Boikess. Dkt. No. 1. The complaint was styled as "a derivative action brought by 50% shareholder Florence Shamah on behalf of Kwik Ticket Inc." *Id.* at ¶ 1. It contained two claims for RICO violations and nine common law causes of action based on allegations that Defendants misappropriated funds from the company. *Id.* at ¶¶ 43-88. Plaintiff sought a TRO and a preliminary injunction in this Court that would allow her to control Kwik Ticket's daily business operations. Dkt. No. 10.

The district court (the Honorable Margo K. Brodie) held a hearing the very next day, on March 20, 2020.  Dkt. No. 21-7.  The court recognized that Plaintiff's case was similar to the "ongoing action in state court" in which "similar issues have been decided."  *Id.* at 5.  The court then found that Plaintiff had failed to show any irreparable injury because Plaintiff's allegations could be remedied by monetary damages at the end of the lawsuit, if necessary.  *Id.* at 34-36.  For these reasons, the court denied Plaintiff's request for a TRO.  *Id.*

Plaintiff then pursued a preliminary injunction, but the district court (now the Honorable Frederic Block) denied this request too.  Dkt. No. 32.  As with the TRO, the court found that a preliminary injunction was not appropriate here because "[Plaintiff's] motion fails to establish the first prong—irreparable harm."  *Id.* at 3.  As before, the court found that any injury could be remedied by monetary damages at the end of the lawsuit, if necessary.  *Id.* at 3-4.  The court went further this time, though, and found that Plaintiff was unable to show any urgency: "That Plaintiff failed to seek injunctive relief until after she received an unfavorable decision in state court further 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'"  *Id.* at 4-5 (citing *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995).  The Court also held that granting the TRO "would confer rights on Issac Shamah that the state court's TRO order enjoined" and therefore "Plaintiff's motion is further barred by the Anti-Injunction Act, 28 U.S.C. § 2283 . . . and the Rooker-Feldman Doctrine."  *Id.*

## IV.   Magistrate Judge Bulsara Issued Orders Requiring Defendants To Comply With Plaintiff's Excessive Discovery Demands

On May 5, 2020, Plaintiff filed a letter asking the Court to schedule a Rule 16 conference to set a discovery schedule.  Dkt. No. 35.  The Spiewaks responded by asking the Court for leave to take limited jurisdictional discovery, while opposing any merits discovery prior to a

determination that this Court had jurisdiction over these claims.  Dkt. No. 36.  Magistrate Judge

Bulsara scheduled the initial conference for June 5, 2020, and directed the parties to submit their

discovery plans by June 3, 2020.

In their June 3, 2020 letter, Defendants asserted that this lawsuit was subject to the binding

arbitration provision in the Kwik Ticket Shareholders' Agreement, and therefore, no merits

discovery should go forward until the threshold arbitration issue was resolved.  Dkt. No. 41

("Allowing merits discovery would interfere with the arbitrator's jurisdiction over this dispute.").

The remaining defendant adopted this position as well.  Dkt. No. 42.  Plaintiff, on the other hand,

sought to take discovery on the merits of their claims.  Dkt. No. 40.

At the June 5, 2020 initial conference, Magistrate Judge Bulsasra rejected Defendants'

arguments that merits discovery should not begin until the motion to compel arbitration was

decided.  Minute Order, June 5, 2020.  Instead, he required the completion of all discovery related

to "evaluating the possibility of settlement" by August 1, 2020, which would occur before the

filing of any motion to dismiss.  *Id.*  Magistrate Judge Bulsara also ordered Defendants to

participate in a settlement conference on October 16, 2020.  *Id.*

Although the discovery was nominally limited to issues relating to settlement, on June 19,

2020, Plaintiff issued her first set of document requests, which sought nearly every business record

in Kwik Ticket's possession for a period of seventeen years, including:

- Documents concerning all federal, state, and local tax returns prepared for and/or filed on behalf of Kwik Ticket.

- Documents concerning all statements of all bank accounts, brokerage accounts, and other financial accounts, and all cancelled checks for any of these accounts, in which Kwik Ticket has or had an interest, individually or jointly.

- Invoices concerning any check made payable to "cash."

- Documents concerning invoices in the name of (a) PMX Freight Systems; (b) Basic Office Essentials; (c) Mega Plastic Group; (d) Morris Trucking; and (e) Blanca Cleaners.

- All data from any accounting or bookkeeping software used by Kwik Ticket to track invoices, payments, and/or expenses.

- Documents, including but not limited to W-2s, 1099s, and K-1s, evidencing or concerning all distributions, fees, wages, commissions, salaries, draws, and fringe benefits, or bonuses paid by Kwik Ticket.

- Documents concerning Kwik Ticket financial statements, including without limitation profit and loss statements and balance sheets.

- Documents concerning accounting work papers for Kwik Ticket.

- Documents concerning communications between Kwik Ticket (including any of its employees) and Joel Boikess or any other accountant.

Dkt. No. 48-2.

On June 17, 2020, the Spiewaks sought a pre-motion conference for leave to file their motion to dismiss.  Dkt. No. 46.  The Spiewaks presented four arguments in support of its request for a pre-motion conference, and the very first argument was that the "Plaintiff's claims are subject to arbitration."  *Id.* at 2.  The other two defendants similarly sought a stay pending the arbitration between Plaintiff and the Spiewaks.  Dkt. Nos. 47, 50.  On July 20, 2020, the Court scheduled the pre-motion conference for November 12, 2020.  Dkt. No. 53.

On June 19, 2020, the Spiewaks filed timely Objections to Magistrate Judge Bulsara's June 5, 2020 Order compelling them to participate in discovery and a settlement conference.  Dkt. No. 48.  The Spiewaks reiterated that they should not be subject to discovery in federal court because of the arbitration clause in the Kwik Ticket Shareholders' Agreement.  *Id.*  On July 31, 2020, with Magistrate Judge Bulsara's August 1, 2020 discovery deadline looming, the Spiewaks filed a motion to stay the June 5, 2020 Order.  Dkt. No. 54.  Magistrate Judge Bulsara, however, denied the motion.  Minute Order, August 3, 2020.

Seeking relief from Magistrate Judge Bulsara's orders, on August 4, 2020, the Spiewaks filed a letter motion before Judge Block seeking a stay of the June 5, 2020 Order, arguing that it was an abuse of discretion and irreparable harm to compel the Spiewaks to produce documents in federal court before their motion to compel arbitration was heard.  Dkt. No. 55.  Two days later, on August 6, Judge Block ordered Plaintiff to file a response to the Spiewaks' letter motion by August 20, 2020.  Minute Order, August 6, 2020.  Plaintiff filed a timely response.  Dkt. No. 59.

Meanwhile, on August 13, 2020, before this Court ruled on the Spiewaks' objections or their motion to stay, Plaintiff returned to Magistrate Judge Bulsara and moved to compel Defendants to produce the requested discovery.  Dkt. No. 56.  The Spiewaks argued that this motion to compel was improperly trying to rush discovery that should be stayed while Judge Block evaluated Defendants' argument that discovery should be stayed until their motion to compel arbitration was decided.  Dkt. No. 58.  The Spiewaks also objected because Plaintiffs' request for seventeen years of business records was plainly overbroad, and beyond the scope of the purportedly "limited" discovery permitted by Magistrate Judge Bulsara.  Magistrate Judge Bulsara, however, granted Plaintiff's motion on September 1, 2020.  Dkt. No. 61.  Not only did the order require the Spiewaks to produce documents in response to Plaintiff's excessive discovery demands, the Order also stated that further arguments from Defendants about this issue "will lead to sanctions on both [Defendants'] counsel and parties."  *Id.* at 2.

On September 17, 2020, Magistrate Judge Bulsara issued a second order, this time compelling Defendant Malkah Jacobovits to produce Kwik Ticket documents that she had in her possession.  As with the prior order, Magistrate Judge Bulsara threatened sanctions if Ms. Jacobovits did not comply with his Order.

## LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure authorizes this Court to impose a preliminary injunction and temporary restraining order.  Fed. R. Civ. P. 65(a), (b).  Under well-established law, a preliminary injunction is warranted if the party seeking the injunction can show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."  *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004).  The standard for an entry of a temporary restraining order is the same as for a preliminary injunction.  *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).

## ARGUMENT

This dispute is subject to a controlling arbitration agreement, and Defendants have consistently maintained that Plaintiff's claims in this case should be arbitrated.  However, under the current schedule, Defendants' motion to compel arbitration will not be filed for several months, and in the meantime, Defendants are being compelled to participate in discovery and settlement negotiations in this Court, which irreparably harms their contractual right to arbitrate every aspect of this dispute.  The proceedings in this Court must therefore be stayed.

**I.     Defendants Will Prevail On The Merits Of Their Motion To Stay And To Compel Arbitration Under Sections 3 And 4 Of The FAA**

**A.     The Shareholders' Agreement Contains A Valid Arbitration Clause That Makes Plaintiff's Claims Against Mr. Spiewak Arbitrable**

The Federal Arbitration Act ("FAA") requires courts to stay proceedings and compel a plaintiff's claims to arbitration when the claims are arbitrable.  9 U.S.C. §§ 3, 4.  To stay a proceeding, section 3 of the FAA provides that when a case involves an issue "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until

such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3. Because this statute uses the word "shall," the court *must* grant a stay if requested for arbitrable claims.  *Katz v. Cellco P'ship*, 794 F.3d 341, 345-47 (2d Cir. 2015).  To compel claims to arbitration, section 4 of the FAA provides that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" can file a motion to compel in federal court, which the court must grant "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.

Determining whether claims are arbitrable involves a two-step determination.  Courts must examine: "(1) whether the parties have entered into a valid agreement to arbitrate; and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).  The FAA provides that arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "In determining the scope of an arbitration agreement, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."  *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 314 (2010).

This case law "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  Given the strong policy favoring arbitration, it is "the party resisting arbitration [that] bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000);

*Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) ("The party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue.").

Here, the Kwik Ticket Shareholders' Agreement contains a classically broad and unambiguous arbitration provision stating: "Any dispute relating to or arising out of this agreement shall be resolved by arbitration before three arbitrators in the City of New York under the rules then obtaining of the American Arbitration Association." Dkt. No. 12-2 at ¶ 13, also attached as **Exhibit 2** to the Kadosh Declaration. Plaintiff and Mr. Spiewak are the sole members under the Shareholders' Agreement. Dkt. No. 12-2 at 8.[1]

Plaintiff's claims in this case plainly fall within the scope of the broad arbitration provision that applies to "any dispute." *See* Dkt. No. 12-2 at ¶ 13. Plaintiff brings her claims as a Kwik Ticket shareholder, and her status as a shareholder is established by the Shareholders' Agreement. *See* Dkt. No. 1 at ¶ 1.[2] Furthermore, the Shareholders' Agreement contains a decision-making process for a variety of corporate actions and required Mr. Spiewak to "devote all of his time to the business of the Corporation." Dkt. No. 12-2 at ¶¶ 3-4. By alleging that Mr. Spiewak engaged in a pattern of fraud and self-dealing, and by seeking to enjoin him from "taking any actions that are not properly authorized by the Company," Plaintiff's claims plainly implicate the terms of the Shareholders' Agreement. *See id.*

Thus, Plaintiff's claims are arbitrable under sections 3 and 4 of the FAA, and this Court should stay these proceedings and compel Plaintiff's claims against Mr. Spiewak to arbitration.

---

[1] Plaintiff purports to be the successor-in-interest to her deceased husband, David Shamah. *See* Compl. Dkt. No. 1 at ¶ 8 ("Today (and for the past several years), Larry Spiewak owns 50%, and David Shamah's wife, Florence Shamah, owns 50%.").
[2] Kwik Ticket was originally called Swift Ticket, but changed its name to Kwik Ticket in 1983. *See* Kadosh Decl., Ex. 2.

*See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 20 (2d Cir. 2005) (holding that an arbitration clause applying to "any dispute" is "the paradigm of a broad clause"); *Lozada v. Progressive Leasing*, No. 15-cv-2812 (KAM)(JO), 2016 WL 3620756, at *2 (E.D.N.Y. June 28, 2016) (collecting cases showing that broad arbitration clauses applying to "any dispute" create "a presumption of arbitrability"); *Maresca v. La Certosa*, 172 A.D.2d 725, 726 (2d Dep't 1991) (requiring arbitration for claims about waste and conversion of corporate assets when the shareholders' agreement mandated arbitration for "[a]ny dispute or controversy between the parties relating to or arising out of the affairs of the Corporation or this Agreement").  Defendants will therefore be able to show a likelihood of success as to Mr. Spiewak.

> **B.    Equitable Principles Make Plaintiff's Claims Against Mrs. Spiewak And Ms. Jacobovits Arbitrable**

Defendants Mrs. Spiewak and Ms. Jacobovits are not signatories to the Shareholders' Agreement, but equitable principles nonetheless require that they be treated the same as Mr. Spiewak.  These principles apply for both staying proceedings and compelling arbitration.

As to a stay of proceedings, a court should stay litigation even when not all parties to the litigation are compelled to arbitration.  *Arnold v. Arnold Corp.-Printed Commc'ns for Bus.,* 920 F.2d 1269, 1281 (6th Cir. 1990).  Allowing litigation to proceed against some of the defendants, while allowing arbitration to proceed against the other defendants would allow the plaintiff to "avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." *Id.*  Courts therefore can stay collateral disputes against side-parties pending an arbitration between the principals.  *Acquaire v. Canada Dry Bottling,* 906 F. Supp. 819, 838 (E.D.N.Y. 1995) (staying nonarbitrable claims pending arbitration; "[A]rbitration of plaintiffs' claims against defendants . . . will partially determine most

of the issues raised against the other named defendants in this case.  It appears at the very least that significant insight will be afforded the Court and the parties by the conduct and result of the arbitration . . . .”).

As to compelling arbitration, a non-signatory to an arbitration agreement can enforce an arbitration agreement through equitable estoppel.  *Diaz v. Mich. Logistics Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y 2016).  The Second Circuit has long recognized that an arbitration agreement can be enforced in those circumstances when “the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.”  *Choctaw Generation LP v. Am. Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (quoting *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int’l, Inc.*, 198 F.3d 88, 98 (2d Cir.1999)); *Diaz*, 167 F. Supp. 3d at 382 (holding that a non-signatory could bind the plaintiff to an arbitration agreement because the allegations were factually intertwined).  In addition to having “intertwined” factual issues, there must also be “a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute” with the non-signatory.  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d. Cir. 2008)).

Although Mrs. Spiewak and Ms. Jacobovits are not signatories to the Shareholders’ Agreement, Plaintiff’s claims against Mrs. Spiewak and Ms. Jacobovits are wholly intertwined with the facts related to Mr. Spiewak because the claims are derivative and relate to Mr. Spiewak’s purported misconduct.  *See* Dkt. No. 1 at ¶¶ 43-88.  For example, in an allegation that is as offensively misogynistic as it is false, the Complaint states that “much of the misconduct engaged in by Mr. Spiewak came at the behest, instruction and demand of Mindy Spiewak, who personally

benefited greatly from the fraudulent activities described herein, including Company-paid vacations and expensive jewelry." *Id.* at ¶ 18.  Similarly, the Complaint alleges that Ms. Jacobovitz would make out checks to cash and created false invoices at Mr. Spiewak's behest.  *Id.* at ¶¶ 25-26.

Furthermore, Mrs. Spiewak and Ms. Jacobovits both have extensive relationships with Mr. Spiewak and Kwik Ticket—Mrs. Spiewak is the wife of Mr. Spiewak, and Ms. Jacobovits was the bookkeeper employed by Mr. Spiewak at Kwik Ticket.  *Id.* at ¶ 1.  The claims against Mrs. Spiewak and Ms. Jacobovits are wholly derivative of the claims against Mr. Spiewak—if he did not defraud Kwik Ticket, neither did they.   Mrs. Spiewak and Ms. Jacobovits are therefore entitled to a stay these proceedings and to compel the claims against them to arbitration.  *See Acquaire*, 906 F. Supp. at 838; *Diaz*, 167 F. Supp. 3d at 382.  Here too, Defendants will be able to show a likelihood of success.

### C.    Plaintiff's Argument That Defendants Waived Their Right To Arbitrate Has No Merit

In her various letters to the Court, Plaintiff has never disputed the authenticity of the Shareholders' Agreement—indeed, she attached the Agreement to her failed bid to obtain a TRO. Dkt. No. 12-2.  Plaintiff has also never disputed that her claims fall within the scope of the broad arbitration clause in the Shareholders' Agreement.  Instead, Plaintiff has raised three arguments asserting that Mr. Spiewak has waived his ability to arbitrate this dispute, but these arguments have no merit under well-established case law.

"There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104– 105 (2d Cir.2002) (quoting *Coca–Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local 812,* 242 F.3d 52, 57 (2d Cir.2001)).  As a result, any doubts regarding waiver should be

resolved in favor of arbitration. *See PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir.1997). Although "the issue is fact-specific and there are no bright-line rules," *S & R Co. of Kingston v. Latona Trucking, Inc.,* 159 F.3d 80, 83 (2d Cir.1998) "waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir. 1985).

1.      **The State Court Action Brought By Kwik Ticket Against Isaac Shamah Does Not Constitute A Waiver Of Defendants' Right To Arbitrate**

Plaintiff argues that Defendants waived their right to arbitrate this dispute because Kwik Ticket (not Defendants) sought an injunction in the State Court Action against Isaac Shamah, who is not a party to the Shareholders' Agreement or this litigation.  This argument fails for multiple reasons.  The defendant in the State Court Action was Isaac Shamah, and by Plaintiff's own admission, he is not a member of the Shareholders' Agreement.  *See* Compl. Dkt. No. 1 at ¶ 8 ("Today (and for the past several years), Larry Spiewak owns 50%, and David Shamah's wife, Floence Shamah, owns 50%."); Dkt. No. 12-2 at 8.[3]  Moreover, the State Court Action was brought by Kwik Ticket, as represented by the company's counsel, Goldberg, Weg and Markus PLLC. The State Court Action was not brought by Mr. or Mrs. Spiewak or Ms. Jacobovits.  Dkt. No. 21 at ¶ 35.  Thus, the defendants in this case are not litigants in the State Court Action, and could not have not waived any arbitration rights in that proceeding.  *See EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.,* No. 3:10-CV-1489 WWE, 2012 WL 5878657, at *3 (D. Conn. Nov. 21, 2012) (no waiver of right to arbitrate where "litigation [] involved a non-party to the arbitration agreement.")

---

[3] Florence Shamah was initially named as a defendant in the State Court Action, but Kwik Ticket dropped her from the case shortly thereafter. *See* Dkt. No. 43 at 3.

2.   **A Statement Purportedly Made By Kwik Ticket's Attorney In An Email Exchange Related To The State Court Action Does Not Constitute Waiver**

Plaintiff further argues that Defendants waived their right to arbitrate because Kwik Ticket's counsel, in an email about the State Court Action, purportedly said that the parties had not complied with the governance provisions of the Shareholders' Agreement, and that they were therefore not binding. This argument, however, is fatally flawed for three reasons.

First, statements made by counsel of a party in one case cannot be imputed to separate parties in a different case. Here, the purported statements at issue were made by Kwik Ticket's counsel in the State Court Action, to which Defendants are not parties and do not share counsel with Kwik Ticket. *See* Dkt. No. 21 at ¶ 35. For this reason alone, no waiver is present.

Moreover, Plaintiff's position is internally inconsistent because, even as she disclaims the Shareholders' Agreement for purposes of its arbitration clause, she turns around and embraces the Shareholders' Agreement for purposes of recognizing her as a shareholder in Kwik Ticket. Specifically, Plaintiff relies on the Shareholders' Agreement to claim that she is entitled to certain rights as a shareholder, including that she has standing to bring this lawsuit. *See* Dkt. No. 1 at ¶ 1 ("This is a derivative action brought by 50% shareholder Florence Shamah on behalf of Kwik Ticket Inc., a New York corporation . . . ."). The alleged infringement of these shareholder rights forms the entire basis of her lawsuit. Plaintiff cannot pick and choose which provisions of the Shareholders' Agreement she asserts are binding—claiming shareholder rights under the agreement, while simultaneously disclaiming the obligation to arbitrate disputes arising under the agreement. *See, e.g.*, *Wu v. Pearson Educ. Inc.*, No. 09 Civ. 6557 (RJH), 2010 WL 3791676, at *3 (S.D.N.Y. Sept. 30, 2010) (holding that an arbitration clause in a contract was enforceable when the plaintiff collected a fee based on a different clause of the contract because the plaintiff "may not pick and choose among the terms" of the contract).

Finally, Plaintiff's argument is barred by a no-waiver clause in the Shareholders' Agreement.  This clause states that "[n]o provisions hereof may be altered, waived, amended or revoked, except in writing to be signed by the party to be charged therewith."  Dkt. No. 12-2 at ¶ 14.  Such anti-waiver clauses are enforced.  *See, e.g.*, *Kamin v. Koren*, 621 F. Supp. 444, 447 (S.D.N.Y. 1985) (enforcing a nearly identical anti-waiver clause).  Plaintiff has not provided any written modification of the Shareholders' Agreement voiding the arbitration clause, and it therefore still remains in effect.  *See* Dkt. No. 12-2 at ¶ 14.

### 3. Defendants' Request for Jurisdictional Discovery Does Not Constitute Waiver

Plaintiff claims that Defendants' request for jurisdictional discovery in this case amounts to a waiver of their right to arbitration, but Defendants have consistently opposed any merits discovery on the grounds that this dispute must be arbitrated.  *See* Dkt. Nos. 36, 41, 46, 47, 48, 54, 55, 58.  Defendants sought jurisdictional discovery not to engage in "protracted" litigation, but to promptly end this litigation.  Specifically, the jurisdictional discovery was requested to establish Plaintiff's domicile, which in turn, would have shown that Plaintiff lacked diversity jurisdiction to bring this lawsuit in federal court.  *See id.*  Accordingly, Defendants' requested discovery was not "on the merits," but was targeted at addressing the threshold issue about whether this case could even proceed in this Court.  *See id.*

Additionally, even though Magistrate Judge Bulsara has ordered merits discovery to go forward, he has not granted Defendants' request for jurisdictional discovery.  Thus, Plaintiff has not suffered any prejudice from Defendants' request.  Based upon these facts, Defendants did not waive their right to arbitration.  *See Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320, 327-33 (E.D.N.Y. 2000) (Block, J.) (emphasizing that litigation that was not about the merits of the case did not amount to waiver).

## II. Defendants Will Suffer Irreparable Harm If These Proceedings Are Not Stayed Because They Will Be Forced To Litigate Claims That Are Subject To Arbitration

To establish irreparable harm, petitioners "must demonstrate that absent [injunctive relief] they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234-35 (2d Cir. 1999)).  Moreover, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." *Reuters, Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

In the context of arbitration proceedings, a party suffers irreparable harm when it is compelled to litigate disputes that are subject to arbitration. *Emilio v. Sprint Spectrum L.P.*, No. 08 CV 7147(BSJ), 2008 WL 4865050, at *2 (S.D.N.Y. Nov. 6, 2008) (granting injunction to prevent litigation in light of arbitration provision in order to "prevent [plaintiff] from suffering the irreparable harm that the loss of his right to arbitrate would entail") *aff'd*, 315 F. App'x 322 (2d Cir. 2009); *Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, No. 02 CIV. 9369 (DFE), 2003 WL 23641529, at *12 (S.D.N.Y. June 4, 2003) ("The deprivation of GEMS–IT's contractual right to arbitrate its claims . . . constitutes irreparable harm.") *aff'd* 369 F.3d 645 (2d Cir. 2004); *Nat'l Union Fire Ins. Co. v. Advanced Micro Devices, Inc.*, No. 16-CV-5699 (JGK), 2016 WL 4204066, at *5 (S.D.N.Y. Aug. 4, 2016) ("It is well established that losing the ability to enforce an arbitration agreement is a form of irreparable harm."); *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 406 (S.D.N.Y. 2018) ("Petitioners will suffer irreparable harm if they are forced to litigate rather than arbitrate this dispute."); *Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., Inc.*, 962 F. Supp. 385, 391 (S.D.N.Y. 1997) ("[The applicant] will suffer irreparable harm if it is deprived of its federal and state contractual right to arbitrate its disputes with [the responding

party].").  "Even if they ultimately prevail in the foreign proceedings, they will have lost the very benefit of the arbitration clause, which was to avoid litigation." *Id.* "

The irreparable harm caused by litigating claims that should be in arbitration is compounded by Magistrate Bulsara's Orders compelling Defendants to produce seventeen years of business records. "If a dispute is arbitrable, responsibility for the conduct of discovery lies with the arbitrators."  *CIGNA HealthCare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 855 (7th Cir. 2002) (stating that the "judge's refusal to stay discovery on the merits of the providers' breach of contract claims until the issue of arbitrability is resolved puts the cart before the horse").  An agreement to arbitrate is an agreement to proceed under arbitration and not under court rules . . . ."  *Suarez-Valdez v. Shearson Lehman/Am. Express, Inc.*, 858 F.2d 648, 649 (11th Cir. 1988) (holding that district court erred in refusing to stay discovery" pending arbitration).Therefore, requiring parties to conduct discovery in federal court subjects them "to the very complexities, inconveniences and expenses of litigation that they determined to avoid."  *Klepper v. SLI, Inc.*, 45 Fed. App'x 136, 139 (3d Cir. 2002) (concluding that the district court abused its discretion in ordering discovery to proceed before a motion to compel arbitration was decided); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) (finding that a defendant would suffer irreparable harm if compelled to produce discovery because "it will then be obligated, in order to purge its contempt, to provide the very discovery it argues it has no obligation to produce").

Here, Defendants have consistently maintained that this dispute must be arbitrated.  But if Defendants are subjected to ongoing proceedings in this Court, Defendants would have to litigate the same issues in both the arbitration proceeding and in this case, and they will lose the benefit of

the arbitration agreement that was intended to help them avoid litigation.   Continuing this proceeding therefore amounts to irreparable harm.  *See WTA Tour*, 339 F. Supp. 3d at 406.

Additionally, Magistrate Judge Bulsara ordered Defendants, under threat of sanction, to produce seventeen years of Kwik Ticket business records or else suffer sanctions "on both [Defendants'] counsel and parties."  Dkt. No. 61 at 2.  This threat of compelled discovery and impending sanctions underscores the irreparable nature of the harm on Defendants.  *See, e.g.*, *Merril Lynch, Pierce, Fenner & Smith Inc. v. Doe*, 868 F. Supp. 532, 540 (S.D.N.Y. 1994) (finding irreparable harm when a state court threatened a litigant with sanctions for exercising its arbitration rights because "the state court's orders were invalid, had a chilling effect on the exercise of litigation rights, posed an unwarranted threat of contempt, and delayed the harmed party's right to a speedy and just resolution of their claim").

While Defendants hoped that its motion to compel arbitration could be heard by the Court without seeking emergency relief,  Plaintiff's aggressive pursuit of overbroad discovery, and Magistrate Judge Bulsara's September 1, 2020 and September 17, 2020 orders compelling Defendants to provide that discovery—all before this Court ever heard or decided the threshold question of whether this dispute should be arbitrated—will prevent Defendants from obtaining a resolution of their motion to compel before having to engage in litigation in this Court.  Without a stay, Defendants will be forced to litigate in a court that they tried to avoid through their arbitration agreement, will have to comply with Plaintiff's excessive discovery demands, and will be sanctioned by Magistrate Judge Bulsara.  This burden is not "minimal," but is substantial and amounts to irreparable harm.  *See First City*, 131 F. Supp. 2d at 543.

## CONCLUSION

For the foregoing reasons, Defendants' application for a temporary restraining order and preliminary injunction to stay this proceeding pending arbitration and to compel arbitration of

Plaintiff's claims should be granted in its entirety, along with such other and further relief as the

Court deems just, proper, and equitable.


Dated: New York, New York
         September 17, 2020


                              By:_____/s/ Joseph Tuso_____
                              Joseph Tuso
                              Samuel Kadosh
                              Reed Smith LLP
                              599 Lexington Avenue
                              New York, NY  10022
                              Tel. (212) 521-5400
                              Fax. (212) 521-5450
                              *Attorneys for Defendants*
                              *Larry Spiewak, Mindy Spiewak, and Malkah*
                              *Jacobovits*