**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
--------------------------------------------------- X
KWIK TICKET INC.,                                   :
by its 50% owner, FLORENCE SHAMAH,                  :
and FLORENCE SHAMAH, Individually,                  :        Case No. 20-cv-01201-FB-SJB
                                                    :
                            Plaintiff,              :
                                                    :
            -against-                               :
                                                    :
LARRY SPIEWAK, et al.,                              :
                                                    :
                            Defendants.             X
--------------------------------------------------- 
```

<br><br>

## MEMORANDUM OF LAW OF
## DEFENDANTS LARRY SPIEWAK, MINDY SPIEWAK, AND MALKAH JACOBOVITS
## IN SUPPORT OF THEIR MOTION TO COMPEL, MOTION TO DISMISS, AND
## MOTION TO STRIKE

<br><br>

### REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendants*
*Larry Spiewak, Mindy Spiewak, and Malkah Jacobovits*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF RELEVANT FACTS ...................................................3

I.    Mr. Spiewak Is The President And Sole Operating Partner Of Kwik Ticket ....................3

II.   Plaintiff's Son Tried Taking Over Kwik Ticket, But Kwik Ticket Obtained A TRO In State Court That Barred Plaintiff's Son From Interfering With The Company ..................................................................................4

III.  Plaintiff Responded By Filing This Action In Federal Court And Seeking A TRO That Would Give Her Control Of Kwik Ticket, But Judge Brodie And Judge Block Denied Her That Relief ....................................................5

LEGAL STANDARDS ...........................................................................7

ARGUMENT ........................................................................................8

I.    This Court Should Grant The Spiewak Defendants' Motion To Compel ...........................8

      A.    The Shareholders' Agreement Requires Arbitration Of Plaintiff's Claims Against The Spiewak Defendants....................................................8

      B.    The Court Also Should Compel Arbitration Of The Claims Against Mrs. Spiewak And Ms. Jacobovits Under Equitable Principles.....................................12

      C.    The Court Should Stay The Claims Against Mrs. Spiewak And Ms. Jacobovits, Even If It Does Not Compel Arbitration Of Those Claims ...............14

II.   Alternatively, This Court Should Grant The Spiewak Defendants' Motion To Dismiss.........................................................................15

      A.    Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(c) Because She Is Unable To Plead An Enterprise, Two Or More Predicate Acts, Relatedness, Continuity, And Interstate Commerce....................................15

            1.    Plaintiff Does Not Allege An Enterprise Because The Spiewak Defendants Were Not Distinct From The Enterprise And Plaintiff Failed To Allege The Enterprise's Structure And Organization ..............17

            2.    Plaintiff Does Not Adequately Plead The Existence of Predicate RICO Acts................................................................20

            3.    Plaintiff Does Not Allege A Pattern Of Racketeering Activity Because The Predicate Acts Are Not Related...........................................23

4.      Plaintiff Does Not Allege A Pattern Of Racketeering Activity
        Because The Predicate Acts Lack Continuity........................................... 24

5.      Plaintiff Does Not Allege Interstate Commerce Because All
        Relevant Activities Occurred In New York............................................. 27

B.      Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(d)
        Because Her RICO Claim Under 18 U.S.C. § 1962(c) Failed As Well ...............27

C.      Plaintiff Fails To State A Claim For Conversion Because Control Of A
        Business Is Not "Property" Under A Conversion Claim ......................................27

D.      Plaintiff Fails To State A Claim For A Preliminary And Permanent
        Injunction Because There Is No Irreparable Harm ................................................29

III.    This Court Should Strike Paragraphs 49 To 53 And Corresponding Exhibits N
        And O Because They Are Immaterial, Impertinent, And Scandalous ..............................30

CONCLUSION..................................................................................................................32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.X.M.S. Corp. v. Friedman*,
    948 F. Supp. 2d 319 (S.D.N.Y. 2013) .......................................................................28

*Acquaire v. Canada Dry Bottling*,
    906 F. Supp. 819 (E.D.N.Y. 1995) ............................................................................13

*Aetna Ins. Co. v. Capasso*,
    75 N.Y.2d 860 (1990) ................................................................................................28

*In re Am. Express Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011) .........................................................................................9

*Anatian v. Coutts Bank*,
    193 F.3d 85 (2d Cir. 1999) ........................................................................................21

*ARB Upstate Commc'ns LLC v R.J. Reuter, L.L.C.*,
    93 A.D.3d 929 (2012) ................................................................................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................7

*Bensadoun v. Jobe-Riat*,
    316 F.3d 171 (2d Cir. 2003) .........................................................................................7

*C & B Enters. USA, LLC v. Koegel*,
    136 A.D.3d 957 (2d Dep't 2016) ...............................................................................27

*Caruso v. Bumgarner*,
    120 A.D.3d 1174 (2d Dep't 2014) .............................................................................28

*Cedric Kushner Promotions Ltd. v. King*,
    533 U.S. 158 (2001) .............................................................................................17, 20

*Choctaw Generation LP v. Am. Home Assurance Co.*,
    271 F.3d 403 (2d Cir. 2001) ......................................................................................12

*Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*,
    242 F.3d 52 (2d Cir. 2001) ........................................................................................14

*Cofacredit S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)..................................................................15, 24

*Colavito v N.Y. Organ Donor Network, Inc.*,
    8 N.Y.3d 43 (2006) ...................................................................................27

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
    58 F.3d 16 (2d Cir. 2005) .........................................................................10

*Conte v. Newsday*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ......................................18, 19, 20

*Crawford v. Franklin Credit Mgmt. Corp.*,
    758 F.3d 473 (2d Cir. 2014)................................................................16, 20

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) .....................................................................18

*Discon, Inc. v. NYNEX Corp.*,
    93 F.3d 1055 (2d Cir. 1996)......................................................................26

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)....................................................................21

*Doe v. Indyke*,
    468 F. Supp. 3d 625 (S.D.N.Y. 2020).........................................................8

*Donahue v. Asia TV USA Ltd.*,
    208 F. Supp. 3d 505 (S.D.N.Y. 2016)..................................................30, 31

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).........................................................18, 23, 26

*G-I Holdings, Inc. v. Baron & Budd*,
    238 F. Supp. 2d 521 (S.D.N.Y. 2002)........................................................29

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*,
    67 F.3d 463 (2d Cir.1995).........................................................................24

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
    13 F. Supp. 2d 417 (S.D.N.Y. 1998)..........................................................29

*Goldfine v. Sickenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y.2000).........................................................16

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*,
    748 F.3d 1 (1st Cir. 2014).........................................................................11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010)................................................................9

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000)................................................................9

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................15, 16, 18, 19

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)............................................................22, 23

*High View Fund, L.P. v. Hall*,
   27 F. Supp. 2d 420 (S.D.N.Y. 1998)..........................................27

*Hirschfeld Prods. v. Mirvish*,
   88 N.Y.2d 1054 (1996).........................................................11

*Isaac Shamah v. Steven Shamah, Ronald Shamah et al.*,
   Docket No. 650215/2011 (Sup Ct. N.Y. County Jan 26, 2011) .....................1

*JSG Trading Corp. v. Tray–Wrap, Inc.*,
   917 F.2d 75 (2d Cir.1990)......................................................28

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013).........................................24

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) ..............................................16

*Limestone Dev. Corp. v. Vill. of Lemont*,
   520 F.3d 797 (7th Cir. 2008) .................................................16

*The Louis Berger Grp., Inc. v. State Bank of India*,
   802 F. Supp. 2d 482 (S.D.N.Y. 2011).........................................13

*Lozada v. Progressive Leasing*,
   No. 15-cv-2812 (KAM)(JO), 2016 WL 3620756 (E.D.N.Y. June 28, 2016)..........10

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013)...................................................21

*Maresca v. La Certosa*,
   172 A.D.2d 725 (2d Dep't 1991) ..............................................10

*Mathon v. Marine Midland Bank, N.A.*,
   875 F. Supp. 986 (E.D.N.Y. 1995) ............................................24

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   218 F.R.D. 76 (S.D. N.Y. 2003) ...........................................29

*Meyer v. Fleming*,
   327 U.S. 161 (1946).................................................................5

*Miranda v. Ponce Fed. Bank*,
   948 F.2d 41 (1st Cir. 1991)..................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)....................................................................9

*Moss v. Morgan Stanley Inc.*,
   719 F.2d 5 (2d Cir. 1983) ....................................................15

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)...................................................7

*NPS Commc'ns, Inc. v. Cont'l Grp., Inc.*,
   760 F.2d 463 (2d Cir. 1985).................................................14

*Parrish v. Sollecito*,
   No. 01 CIV 5420 (VM), 2002 WL 1072227 (S.D.N.Y. May 28, 2002)..........................30, 31

*PPG Indus., Inc. v. Webster Auto Parts Inc.*,
   128 F.3d 103 (2d Cir. 1997).................................................14

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010).................................................12

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004).................................................28

*Roby v. Corp. of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993)..........................................11, 12

*Rosner v. Bank of China*,
   528 F. Supp. 2d 419 (S.D.N.Y. 2007)...................................19

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996)...................................................20

*Saleeby v. Remco Maint., LLC*,
   148 A.D.3d 570 (1st Dep't 2017) ......................................27, 28

*Shapiro v. Cadman Towers, Inc.*,
   51 F.3d 328 (2d Cir. 1995)...................................................28

*Shetiwy v. Midland Credit Mgmt.*,
   959 F. Supp. 2d 469 (S.D.N.Y. 2013)....................................................................9

*Smith v. AVSC Int'l, Inc.*,
   148 F. Supp. 2d 302 (S.D.N.Y. 2001).............................................................30, 31

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*,
   198 F.3d 88 (2d Cir. 1999)................................................................................12

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
   542 F.3d 354 (2d Cir. 2008)................................................................................13

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)..................................................................15, 23, 24

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143 (E.D.N.Y. 2014) ..............................................................5, 19

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
   310 F.3d 102 (2d Cir.2002)................................................................................14

*Tough Traveler, Ltd. v. Outbound Prod.*,
   60 F.3d 964 (2d Cir. 1995)............................................................................6, 29

*Tuscano v. Tuscano*,
   403 F. Supp. 2d 214 (E.D.N.Y. 2005) ............................................................17, 19

*United States v. Barton*,
   647 F.2d 224 (2d Cir. 1981)................................................................................26

*United States v. Burden*,
   600 F.3d 204 (2d Cir. 2010)................................................................................23

*United States v. Daidone*,
   471 F.3d 371 (2d Cir. 2006)................................................................................22

*United States v. Int'l Longshoremen's Ass'n*,
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..........................................................18, 20

*United States v. Maher*,
   108 F.3d 1513 (2d Cir. 1997)................................................................................21

*United States v. Minicone*,
   960 F.2d 1099 (2d Cir.1992)................................................................................23

*United States v. Persico*,
   832 F.2d 705 (2d Cir. 1987)................................................................................15

*United States v. Polanco*,
   145 F.3d 536 (2d Cir.1998)........................................................................23

*United States v. Szur*,
   289 F.3d 200 (2d Cir. 2002)......................................................................21

*United States v. Turkette*,
   452 U.S. 576 (1981)..................................................................................17

*Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*,
   661 F.3d 164 (2d Cir. 2011).......................................................................7

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990)......................................................................21

*Wohl v. Blair & Co.*,
   50 F.R.D. 89 (S.D.N.Y. 1970)....................................................................8

**Statutes**

9 U.S.C. § 3...............................................................................................8, 12

9 U.S.C. § 4...............................................................................................8, 12

18 U.S.C. § 1341...........................................................................................20

18 U.S.C. § 1343...........................................................................................20

18 U.S.C. § 1956......................................................................................20, 21

18 U.S.C. § 1961(1).......................................................................................20

18 U.S.C. § 1961(4).......................................................................................17

18 U.S.C. § 1961(5).......................................................................................20

18 U.S.C. § 1962............................................................................................15

18 U.S.C. § 1962(c)..........................................................................15, 17, 26

18 U.S.C. § 1962(d).......................................................................................26

28 U.S.C. § 2283.............................................................................................6

Defendants Larry Spiewak, Mindy Spiewak, and Malkah Jacobovits ("the Spiewak Defendants") respectfully submit this Memorandum of Law in support of their motion to (i) compel the arbitration of this action, (ii) dismiss certain causes of action in the Amended Complaint filed by Plaintiff Florence Shamah through her attorney-in-fact Isaac Shamah ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(6), and (iii) to strike certain allegations pursuant to Fed. R. Civ. P 12(f).[1]

## PRELIMINARY STATEMENT

Isaac Shamah is a serial litigator who has sued, among others, his own brothers.[2]  This litigation, which Isaac brings as the purported attorney-in-fact for his mother, Florence Shamah, is principally against the Spiewaks, who were business partners for forty years with Isaac Shamah's late father, David Shamah, and then with his mother, Florence Shamah.  During the course of their partnership, Larry Spiewak successfully operated Kwik Ticket, while the Shamahs were passive investors.  The current litigation began after Isaac attempted to obtain control over Kwik Ticket, Inc. ("Kwik Ticket" or the "Company") and when that attempt failed, he started to fraudulently hold himself out as the CEO of Kwik Ticket.  Kwik Ticket ultimately had to obtain an order from the New York State Supreme Court, Kings County, prohibiting Isaac from interfering with Kwik Ticket.

In response, Isaac, purporting to act as his mother's attorney-in-fact, filed this lawsuit alleging that the Spiewaks, in concert with Kwik Ticket's bookkeeper and accountant, had engaged in a twenty-year, multimillion dollar scheme to defraud Kwik Ticket. These allegations are completely false, and the Spiewak Defendants look forward to vindicating themselves on the

---

[1] This Court granted leave to file a brief of up to 35 pages on July 1, 2021.
[2] *See, e.g.*, *Isaac Shamah v. Steven Shamah*, *Ronald Shamah et al.*, Docket No. 650215/2011 (Sup Ct. N.Y. County Jan 26, 2011).

merits. However, even at this preliminary stage, Plaintiff's Amended Complaint suffers from several fatal defects.

First and foremost, this Court should grant the motion to compel this case to arbitration. The Kwik Ticket Shareholders' Agreement ("the Shareholders' Agreement"), like the operating agreements of many closely held businesses, contains an arbitration provision that allows the parties to resolve disputes efficiently and confidentially.  The Shareholders' Agreement arbitration provision is broad and unambiguous, stating: "Any dispute relating to or arising out of this agreement shall be resolved by arbitration before three arbitrators in the City of New York under the rules then obtaining of the American Arbitration Association."  Plaintiff and Mr. Spiewak are parties to the Shareholders' Agreement, and Plaintiff's claims clearly arise out of and relate to the Shareholders' Agreement.  Mrs. Spiewak and Malkah Jacobovits are also entitled to compel arbitration because they are Kwik Ticket employees and Kwik Ticket is a signatory to the Shareholders' Agreement.

Alternatively, if this Court does not compel arbitration, it should dismiss several of Plaintiff's claims instead.  Plaintiffs' RICO claims should be dismissed because this case is not about a large, interstate civil conspiracy, but is instead based on allegations of "garden variety" fraud.  In particular, Plaintiff provides no allegations that would establish an enterprise, two or more predicate acts, relatedness, continuity, and interstate commerce.  Each of these is an essential requirement of a RICO claim, but they are not present in this case, and the two RICO claims accordingly failed.

Plaintiff's claims for conversion and for a preliminary and permanent injunction should also be dismissed.  The conversion claim is not applicable to this case because conversion requires the plaintiff to have a possessory right in the contested "property," but an ownership share in a

company is not "property" for a conversion claim.  Meanwhile, the claim for a preliminary and permanent injunction fails because this Court has already ruled that Plaintiff is unable to show irreparable harm.

Finally, this Court should strike several paragraphs in Plaintiff's Amended Complaint that were added to harass and embarrass Mr. Spiewak, rather than pursue a valid claim.  The Amended Complaint alleges that Mr. Spiewak engaged in sexual conversations with his employees, and that two of these conversations were secretly recorded without Mr. Spiewak's knowledge.  Plaintiff not only transcribed the conversations in the Amended Complaint, she also uploaded the audio files onto YouTube and made them publicly available.  These new allegations have no effect on Plaintiff's claims, and were added simply to try to embarrass and humiliate Mr. Spiewak.  Such allegations should therefore be stricken from the record.

## STATEMENT OF RELEVANT FACTS

### I.     Mr. Spiewak Is The President And Sole Operating Partner Of Kwik Ticket

Kwik Ticket is a corporation organized under New York law with its principal place of business in New York.  Am. Compl. ¶ 9, Dkt. No. 81.  Mr. Spiewak is Kwik Ticket's president and has been the sole operating partner of the company and solely responsible for its daily operations.  Decl. of Larry Spiewak at ¶¶ 1-11, Dkt. No. 21.  He founded Kwik Ticket approximately forty years ago, and has grown it into a successful business.  *Id.* at ¶ 5.

At the time Kwik Ticket was formed, the parties entered into a Shareholders' Agreement, and Plaintiff, Mr. Spiewak, and the Company are all signatories to the Shareholders' Agreement.[3]

---

[3] Kwik Ticket was initially known as Swift Ticket Inc., but it changed its name to Kwik Ticket, Inc. in 1982.  Am. Compl. ¶ 9.

*See* Declaration of S. Kadosh, Exhibit 1.[4]   The Shareholders' Agreement contains a broad and unambiguous arbitration provision stating: "Any dispute relating to or arising out of this agreement shall be resolved by arbitration before three arbitrators in the City of New York under the rules then obtaining of the American Arbitration Association."  *Id.*

Plaintiff's husband was a non-operating partner of Kwik Ticket.  Spiewak Decl. at ¶ 9, Dkt. No. 21.  When Plaintiff's husband passed away nearly two decades ago, Plaintiff alleges that his interest passed to Plaintiff.  *Id.*  Plaintiff, like her husband, was not involved in running Kwik Ticket or in its management.  *Id.* at ¶¶ 6-10.  Plaintiff's son, Isaac Shamah, was similarly not involved in the management and operations of the company, and he was never an officer, director, manager, or employee of Kwik Ticket.  *Id.* at ¶ 11.

## II.    Plaintiff's Son Tried Taking Over Kwik Ticket, But Kwik Ticket Obtained A TRO In State Court That Barred Plaintiff's Son From Interfering With The Company

In September 2019, Isaac Shamah (Plaintiff's son), began demanding that he be permitted to "run" Kwik Ticket.  *Id.* at ¶¶ 12-34.  When he was denied such a role, Isaac Shamah began interfering with the company's operations, including by representing to customers that he was the CEO of Kwik Ticket and by contacting Kwik Ticket's bank and impersonating Mr. Spiewak in order to redirect Kwik Ticket bank information to his mother's residence.  *Id.*

To stop Isaac Shamah's interference, on January 15, 2020, Kwik Ticket, through its counsel Goldberg, Weg and Markus PLLC, commenced an action in the Supreme Court of the State of New York, Kings County, titled *Kwik Ticket Inc. v. Isaac Shamah et al.*, Index No. 501076/2020 (the "State Court Action").  Spiewak Decl. at ¶ 35, Dkt. No. 21.  The complaint sought a declaration from the state court that Isaac Shamah "has no authority to act on behalf of Kwik Ticket and is not

---

[4] Plaintiff purports to be the successor-in-interest to her deceased husband, David Shamah.  *See* Am. Compl. ¶ 10 ("Today (and for the past several years), Larry Spiewak owns 50%, and David Shamah's wife, Florence Shamah, owns 50%.").

the CEO of Kwik Ticket," along with a permanent injunction that would prevent Isaac Shamah from "entering Kwik Ticket's offices" and "taking any action on behalf of Kwik Ticket." Declaration of L. Spiewak ¶¶ 71, 77, Dkt. No. 15-1.  Kwik Ticket simultaneously sought a temporary restraining order ("TRO") seeking the same relief.  Dkt. No. 15-2.

On January 15, 2020, Justice Larry D. Martin of the Supreme Court of New York, Kings County, granted the TRO.  Dkt. No. 21-3.  However, even the State Court TRO did not deter Isaac. Spiewak Decl. ¶ 38, Dkt. No. 21.  On January 16, 2020, the very next day, after he was served with the TRO, Isaac intentionally violated the State Court TRO by accessing a Kwik Ticket bank account to transfer over $15,300 from Kwik Ticket's account to pay his children's private school tuition at the Magen David School in Brooklyn.  *Id*. at ¶ 38, Ex. 4.  On the same day, Isaac again violated the State Court TRO by charging nearly $1,000 in Knick's basketball tickets to the company credit card.  *Id*. at ¶ 39, Ex. 5.

Isaac filed an "emergency" appeal of the state court TRO to the Appellate Division, Second Department, but the Appellate Division denied Isaac's appeal on January 22, 2020, leaving the State Court TRO in place.  *Id*. at ¶ 40, Ex. 3.  More than a month later, on February 26, 2020, following another lengthy argument before Justice Martin in Kings County, where Isaac raised fabricated allegations of theft similar to those alleged here, the court extended the TRO against Isaac.  *Id*. at ¶ 41, Ex. 6.

### III. Plaintiff Responded By Filing This Action In Federal Court And Seeking A TRO That Would Give Her Control Of Kwik Ticket, But Judge Brodie And Judge Block Denied Her That Relief

To retaliate against the Spiewaks for obtaining the TRO, Isaac, acting as the purported attorney in fact for his mother, Florence Shamah initiated this action on March 4, 2020, against Larry and Mindy Spiewak, Malkah Jacobovits, and Joel Boikess.  *See* Compl., Dkt. No. 1.  Both the original Complaint, and the Amended Complaint filed on June 11, 2021, are improperly

captioned "Kwik Ticket Inc., by its 50% owner, Florence Shamah. *Id.* Plaintiff purports to assert derivative claims on behalf of Kwik Ticket. Am. Compl. ¶ 1. However, it is well established that in a derivative lawsuit, the shareholder must name the corporation on whose behalf it is suing as the *nominal defendant,* not the plaintiff. *See Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 152 (E.D.N.Y. 2014) ("In derivative actions, the corporation must be named as a necessary nominal defendant." (citing *Meyer v. Fleming*, 327 U.S. 161, 167 (1946))).

The Complaint asserted two claims for RICO violations and nine common law claims based on allegations that the Spiewak Defendants had misappropriated funds from the company. *Id.* at ¶¶ 43-88. Plaintiff sought a TRO and a preliminary injunction in this Court that would allow her to control Kwik Ticket's daily business operations. Dkt. No. 10.

This Court (the Honorable Margo K. Brodie) held a hearing on March 20, 2020. *See* Transcript, Dkt. No. 21-7. The Court denied the TRO because Plaintiff failed to show any irreparable injury, as her alleged damages could be remedied by monetary damages. *Id.* at 34-36.

Plaintiff then moved for a preliminary injunction, but the Court (now the Honorable Frederic Block) denied this request too. Dkt. No. 32. As with the TRO, the court found that a preliminary injunction was not appropriate here because "[Plaintiff's] motion fails to establish the first prong—irreparable harm" because any injury could be remedied by monetary damages. *Id.* at 3. The court found that Plaintiff was unable to show any urgency: "That Plaintiff failed to seek injunctive relief until after she received an unfavorable decision in state court further 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Id.* at 4-5 (citing *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995)). The Court also held that granting the TRO "would confer rights

on Isaac Shamah that the state court's TRO order enjoined" and therefore "Plaintiff's motion is further barred by the Anti-Injunction Act . . . and the Rooker-Feldman Doctrine." *Id.*

Plaintiff filed an Amended Complaint in June 2021.  Dkt. No. 83.  The sole purpose of the Amended Complaint is to shame Mr. Spiewak and to harm his reputation.  The primary addition to the Amended Complaint is a purported transcript of several off-color and sexual jokes that Mr. Spiewak allegedly made at work.  Am. Compl. ¶¶ 18-53.  These new allegations are irrelevant to Plaintiff's claim that the Spiewak Defendants misappropriated funds from the company.

## **LEGAL STANDARDS**

In reviewing a motion to compel arbitration, this Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  Under this summary judgment standard, the Court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citation omitted).  When the "undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011).

Meanwhile, in reviewing a motion to dismiss, a complaint must allege plausible facts sufficient "to raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the plaintiff is entitled to relief.  *Iqbal*, 556 U.S. at 678 (citations omitted).  Where the "well-pleaded facts do not permit the court to infer more than the mere

possibility" that a plaintiff is entitled to relief, dismissal is appropriate.  *Id.* at 679; *see also Twombly*, 550 U.S. at 570 (where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").  Although factual allegations are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

Finally, the "standard that applies to a motion to strike is the 'mirror image' of the standard on a 12(b)(6) motion to dismiss for failure to state a claim."  *Doe v. Indyke*, 468 F. Supp. 3d 625, 630 n.5 (S.D.N.Y. 2020).

## ARGUMENT

### I.   This Court Should Grant The Spiewak Defendants' Motion To Compel

#### A.   The Shareholders' Agreement Requires Arbitration Of Plaintiff's Claims Against The Spiewak Defendants

The Court should compel arbitration of the claims against the Spiewak Defendants because the claims relate to and arise out of the Shareholders' Agreement.  Mr. Spiewak is a signatory to that Agreement, and Mrs. Spiewak and Ms. Jacobovits are and were Kwik Ticket employees at all relevant times.

The Federal Arbitration Act ("FAA") requires courts to stay proceedings and compel arbitration of a plaintiff's claims when the claims are arbitrable.  9 U.S.C. §§ 3, 4.  Section 3 of the FAA provides for a stay of proceedings.  It states that when a case involves an issue "referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  Section 4 of the FAA provides for an order compelling arbitration.  It states that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" can file a motion to compel in federal court, which the court must grant "upon being

satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.

In deciding whether to grant a motion to compel arbitration, courts determine: "(1) whether the parties have entered into a valid agreement to arbitrate; and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).  Arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  "In determining the scope of an arbitration agreement, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 314 (2010).

Given the strong policy favoring arbitration, it is "the party resisting arbitration [that] bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) ("The party resisting arbitration bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue.").

Here, the Kwik Ticket Shareholders' Agreement contains a broad and unambiguous arbitration provision stating: "Any dispute relating to or arising out of this agreement shall be resolved by arbitration before three arbitrators in the City of New York under the rules then obtaining of the American Arbitration Association."  Dkt. No. 12-2 at ¶ 13, also attached as

**Exhibit 1** to the Kadosh Declaration.  *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 20 (2d Cir. 2005) (holding that an arbitration clause applying to "any dispute" is "the paradigm of a broad clause"); *Lozada v. Progressive Leasing*, No. 15-cv-2812 (KAM)(JO), 2016 WL 3620756, at *2 (E.D.N.Y. June 28, 2016) (collecting cases showing that broad arbitration clauses applying to "any dispute" create "a presumption of arbitrability").

Plaintiff's claims in this case plainly fall within the scope of the broad arbitration provision that applies to "any dispute relating to or arising out of this agreement." *See* Shareholders' Agreement ¶ 13.  The Shareholders' Agreement required Mr. Spiewak to "devote all of his time to the business of the Corporation." *Id.* at ¶¶ 3-4.  In consideration for his time, the Agreement provided that Mr. Spiewak would receive a salary, plus such additional compensation as may be authorized by the board of directors. *Id.* at ¶¶ 3(c)(2), 4(a).

The Amended Complaint alleges that Spiewak Defendants misappropriated company assets for their personal gain or breached fiduciary duties to the company to enable the Spiewak Defendants to misappropriate company assets. *See, e.g.*, Am. Compl. ¶¶ 61, 65, 69, 76, 79, 84, 89, 92.  Whether asserted by Plaintiff individually or derivatively on behalf of Kwik Ticket, these claims arise out of or relate to Mr. Spiewak's compensation and/or alleged breach of duties to shareholders arising under the Shareholders' Agreement.  See *Maresca v. La Certosa*, 172 A.D.2d 725, 726 (2d Dep't 1991) (requiring arbitration of derivative claims concerning waste and conversion of corporate assets when the shareholders' agreement mandated arbitration for "[a]ny dispute or controversy between the parties relating to or arising out of the affairs of the Corporation or this Agreement").

In addition, the Amended Complaint asserts three claims against Mr. Spiewak relating to his role as the President of Kwik Ticket.  Am. Compl. ¶¶ 90-103.  Specifically, the claim for breach

of contract alleges that "Larry Spiewak and Florence Shamah entered into agreements concerning, among other things, the compensation and other benefits to which they were respectively entitled" and that Mr. Spiewak allegedly breached those agreements by depriving Plaintiff of her "fair share of the Company profits and benefits and compensation . . . ." *Id.* at ¶¶ 91-92. This unnamed agreement is none other than the Shareholders' Agreement, and this new claim also directly arises out of the Shareholders' Agreement. The claim for repayment of legal fees alleges that Mr. Spiewak is using company funds to pay for personal legal expenses—a dispute that directly challenges Mr. Spiewak's corporate authority as President of Kwik Ticket. *Id.* at ¶ 96. And finally, the claim for repayment of settlement funds relates to a past legal action that "the Company" settled, and this too relates to Mr. Spiewak's authority to act on behalf of Kwik Ticket. *Id.* at ¶¶ 101-02. Plaintiff's amendments only strengthen the argument that the claims against Mr. Spiewak must be submitted to arbitration.

The claims against Mrs. Spiewak and Ms. Jacobovits must also be arbitrated because they are Kwik Ticket employees, Kwik Ticket is a signatory to the Shareholders' Agreement, and Plaintiff's claims against them arise out of and relate to the Shareholders' Agreement. "Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (holding that individual defendants were entitled to rely on arbitration provisions incorporated in their employers' agreements with investors even though the individual defendants were not signatories to any of the agreements); *see also Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 13 (1st Cir. 2014); *Hirschfeld Prods. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996).

Here, Plaintiff acknowledged that both Mrs. Spiewak and Ms. Jacobovits were employees of Kwik Ticket: Mrs. Spiewak "draws a substantial salary" from Kwik Ticket, and Ms. Jacobovits was "the office manager who maintained the books, made bank deposits and cashed Kwik Ticket checks . . . ." Am. Compl. ¶¶ 19, 20. The claims against Ms. Jacobovits and Mrs. Spiewak arise out of or relate to the Shareholders' Agreement because Plaintiff alleges that they were acting in their capacity as employees or agents of Kwik Ticket when the breached their fiduciary duties or otherwise engaged in purported misconduct. *Id.* at ¶¶ 18-25. For example, Ms. Jacobovits was acting "at Mr. Spiewak's direction" when she allegedly provided a company "check register" to facilitate payments of company funds to the defendants. *Id.* at ¶ 26. Therefore, as employees of Kwik Ticket facing claims related to their employment, Mrs. Spiewak and Ms. Jacobovits are protected by the arbitration provision in the Shareholders' Agreement and may compel arbitration of Plaintiff's claims through the Shareholders' Agreement. *See Roby*, 996 F.2d at 1360.

In short, Plaintiff's claims are arbitrable under sections 3 and 4 of the FAA, and this Court should compel arbitration of her claims against the Spiewak Defendants.

**B.      The Court Also Should Compel Arbitration Of The Claims Against Mrs. Spiewak And Ms. Jacobovits Under Equitable Principles**

Even if Mrs. Spiewak and Ms. Jacobovits were not entitled to compel arbitration as agents of the signatory corporation, they would be entitled to compel arbitration based on equitable principles. The Second Circuit has long recognized that an arbitration agreement can be enforced by a non-signatory when "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Choctaw Generation LP v. Am. Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001) (quoting *Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)); *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (holding that a non-signatory

could bind the plaintiff to an arbitration agreement because the allegations were factually intertwined).  In addition to having "intertwined" factual issues, there must also be "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory.  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)).

Here, Plaintiff's claims against Mrs. Spiewak and Ms. Jacobovits are intertwined with the claims against Mr. Spiewak.  Plaintiff alleges that Mrs. Spiewak and Ms. Jacobovits participated in the alleged fraudulent scheme orchestrated by Mr. Spiewak.  Am. Compl. ¶¶ 17-19.  For example, the Amended Complaint states that "much of the misconduct engaged in by Mr. Spiewak came at the behest, instruction and demand of Mindy Spiewak, who personally benefited greatly from the fraudulent activities described herein, including Company-paid vacations and expensive jewelry." *Id.* at ¶ 18.  Similarly, the Amended Complaint alleges that Ms. Jacobovits would make out checks to cash and created false invoices at Mr. Spiewak's behest.  *Id.* at ¶¶ 17, 25-26.  The claims against Mrs. Spiewak and Ms. Jacobovits are intertwined with the claims against Mr. Spiewak—if he did not defraud Kwik Ticket, neither did they.

There is also  "a relationship" between Plaintiff, Mr. Spiewak, Mrs. Spiewak, and Malkah Jacobovits "that justifies a conclusion" that Plaintiff is estopped from arbitrating claims against Mrs. Spiewak and Ms. Jacobovits relating to Kwik Ticket.  Mrs. Spiewak is Mr. Spiewak's wife and Ms. Jacobovits was Kwik Ticket's long time office manager, and Plaintiff could reasonably foresee that she would be required to arbitrate claims against them that relate to Kwik Ticket.

Mrs. Spiewak and Ms. Jacobovits are therefore entitled to compel the claims against them to arbitration based upon these equitable principles.  *See Diaz*, 167 F. Supp. 3d at 382.

### C.    The Court Should Stay The Claims Against Mrs. Spiewak And Ms. Jacobovits, Even If It Does Not Compel Arbitration Of Those Claims

Even if this Court were to conclude that Mrs. Spiewak and Ms. Jacobovits are not entitled to enforce the arbitration clause in the Shareholders' Agreement, it should nonetheless stay proceedings against them.  "A stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue in the litigation."  *The Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482 (S.D.N.Y. 2011).  Courts therefore can stay collateral disputes against non-arbitrating parties pending an arbitration between related parties.  *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1995) (staying nonarbitrable claims pending arbitration; "[A]rbitration of plaintiffs' claims against defendants . . . will partially determine most of the issues raised against the other named defendants in this case.  It appears at the very least that significant insight will be afforded the Court and the parties by the conduct and result of the arbitration . . . .");  *see also NPS Commc'ns, Inc. v. Cont'l Grp., Inc.*, 760 F.2d 463, 465 (2d Cir. 1985) (staying the plaintiff's antitrust action while the defendant's contract claim was in arbitration even though the two claims "barely overlap").

Here, as explained above, Plaintiff bases her claims against Larry Spiewak, Mindy Spiewak, and Ms. Jacobovits on the same facts and transactions.  *See* Am. Compl. ¶¶ 1, 54-111.  Simultaneous arbitration of claims against Mr. Spiewak and litigation of claims against Mrs. Spiewak and Ms. Jacobovits could result in inconsistent and irreconcilable determinations of fact or liability.  There is no way for Plaintiff to prevail on her claims against Mrs. Spiewak or Ms. Jacobovits without first prevailing on the claims against Mr. Spiewak.  *See id.*  Moreover, as a practical matter, the litigation against Mrs. Spiewak and Ms. Jacobovits can be stayed without prejudice to Plaintiff because these issues will be finally resolved by the arbitration, and forcing

these issues to be addressed simultaneously in arbitration and litigation would only hinder the timely and efficient resolution of these disputes. *See id.* Therefore, even if the claims against Mrs. Spiewak and Ms. Jacobovits are not compelled to arbitration, this Court should nonetheless stay them pending the outcome of the arbitration with Mr. Spiewak.[5]

## II.   Alternatively, This Court Should Grant The Spiewak Defendants' Motion To Dismiss

### A.   Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(c) Because She Is Unable To Plead An Enterprise, Two Or More Predicate Acts, Relatedness, Continuity, And Interstate Commerce

Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). To satisfy the first requirement, a plaintiff "must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect

---

[5] Plaintiff previously argued that the Spiewak Defendants waived their contractual right to compel arbitration, and the Spiewak Defendants addressed those arguments in prior briefing in this case. *See* Dkt. No. 68 at 14-17. A party resisting arbitration on waiver grounds has the burden to show that the moving party deliberately relinquished its contractual right to arbitrate. *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002) ("There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." (quoting *Coca–Cola Bottling Co. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 57 (2d Cir. 2001)); *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997) (holding that any doubts regarding waiver should be resolved in favor of arbitration). If Plaintiff again raises her meritless waiver arguments in opposition to this motion, the Spiewak Defendants will address on reply any such arguments she may choose to raise.

interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Each of these elements must be pled as to each individual defendant. *See United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987).

Under well-established law, "RICO does not . . . federalize garden-variety state common-law causes of action." *Gross v. Waywell*, 628 F. Supp. 2d 475, 485-99 (S.D.N.Y. 2009) (dismissing RICO claim based on allegation that employees embezzled company funds for personal expenses); *see also Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) ("Mere common-law fraud does not constitute racketeering activity for RICO purposes."). RICO claims should not be used to resolve mere fraud claims because "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)); *see also Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008) ("RICO cases . . . are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim."). "The offenses must be of a degree sufficiently serious not only to inflict injury upon its immediate private victims, but also to cause harm to significant public processes or institutions, or otherwise pose threats to larger societal interests worthy of the severe punitive and deterrent purposes embodied in the statute." *Gross*, 628 F. Supp. 2d 475, 481.

As a result, when analyzing RICO claims, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Goldfine v. Sickenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y.2000) (citation omitted); *see also Gross*, 628 F. Supp. 2d at 481 ("[E]xperience reveals that many plaintiffs, rather than fostering RICO's mission as private attorneys general aiding public law enforcement, actually

appear as private prospectors digging for RICO's elusive gold, and more often than not generating substantial costs rather than net gains to the public.").  Lawsuits based on state-court claims should not be allowed to proceed in federal court through frivolous RICO claims because the "[e]xercise of federal court jurisdiction in . . . cases . . . that rely on nothing more than incidental use of mails or wires in furtherance of a simple fraudulent scheme with few victims and narrow impacts, would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions." *Gross*, 628 F. Supp. 2d at 482.  Moreover, "[g]iven the routine use of mail and wire communications in business operations, . . . RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (citation omitted).

Here, Plaintiff's allegations are nothing more than "garden-variety" fraud, and under the intense level of scrutiny that this Court is required to apply, she fails to state a RICO claim under 18 U.S.C. § 1962(c).  Specifically, as explained below, she fails to show an enterprise, two or more predicate acts, relatedness, continuity, and interstate commerce.

      **1.**    **Plaintiff Does Not Allege An Enterprise Because The Spiewak Defendants Were Not Distinct From The Enterprise And Plaintiff Failed To Allege The Enterprise's Structure And Organization**

Plaintiff's complaint does not contain sufficient allegations to establish an "enterprise." The term "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  The Supreme Court has explained that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by

evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  A plaintiff may establish the existence of an enterprise "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*

Crucially, the plaintiff must show "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001).  "[T]he alleged 'enterprise' through which a pattern of racketeering activity is conducted must be distinct from those persons who stand accused of conducting that racketeering activity.  In other words, the same entity can not appear as both the RICO 'enterprise' and a defendant in the same action." *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 226 (E.D.N.Y. 2005) (citing *Anatian v. Coutts Bank*, 193 F.3d 85, 88-89 (2d Cir. 1999)).  "The requirement of distinctness cannot be evaded by alleging that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013).

In *Gross v. Waywell*, the Southern District of New York applied the distinctness requirement in a case with a fact pattern like this one.  The plaintiff in *Gross* was the director and 90% owner of a tennis club, and he sued several of the club's officers under RICO for taking company funds and using them to pay for their personal expenses.  628 F. Supp. 2d at 483-84.  The director alleged that the officers had concealed their expenditures by making checks out for cash or for unknown vendors and then hiding those payments with the help of the tennis club's bookkeeper.  *Id.*  The director argued that the "enterprise" consisted, in part, of "the legitimate [tennis club], of which all of the Management Defendants were employees and which they used as the means to carry out racketeering activities." *Id.* at 498.  The court, however, rejected this as

being an "enterprise" because the allegations "blur[red] the necessary distinction between the 'person' who unlawfully conducts the affairs of an 'enterprise' and the enterprise itself." *Id.* at 498. The court found that this case did not involve an "enterprise" but simple "self-dealing." *Id.* at 499.

Here, Plaintiff asserts that Kwik Ticket was the RICO enterprise. Am. Compl. ¶¶ 55-56. But, because Plaintiff is asserting derivative claims, she was required to name Kwik Ticket as a defendant. *See Thorsen*, 996 F. Supp. 2d at 152 ("In derivative actions, the corporation must be named as a necessary nominal defendant."). Plaintiff acknowledged this point when she alleges that Kwik Ticket "is properly aligned as a defendant since the management of the Company resists and opposes this action." Am. Compl. ¶ 9. However, Plaintiff realized that she would not be able to assert a RICO claim with Kwik Ticket as a defendant because "the same entity cannot appear as both the RICO 'enterprise' and a defendant in the same action." *Tuscano*, 403 F. Supp. 2d at 226. Plaintiff therefore played fast and loose with her identification of Kwik Ticket, sometimes labeling it as a plaintiff and sometimes as a defendant. As this is a derivative action, Kwik Ticket must be named as a defendant, and Plaintiff has not identified a separate "enterprise." Accordingly, her RICO claim must be dismissed. *See Gross*, 628 F. Supp. 2d at 498-99 ("[T]hese allegations blur the necessary distinction between the 'person' who unlawfully conducts the affairs of an 'enterprise' and the enterprise itself. To this extent, the pleadings raise substantial confusion as to who constitutes the person and the victim, or the person and the tool." (citation omitted)).

Additionally, Plaintiff's allegations all focus on purported wrongdoing of the defendants who were allegedly acting on their own personal interests as they purportedly stole money from the company. Am. Compl. ¶¶ 18-53. By alleging only that the Spiewak Defendants acted on behalf of their own personal interests, Plaintiff fails to establish that there was an "enterprise" for

RICO.  *See Cedric Kushner*, 533 U.S. at 163 (holding that a RICO defendant must have "participated in the conduct of the *enterprise's* affairs, not just their *own* affairs").

Plaintiff's enterprise allegations also fail because a plaintiff must also be able to allege the structure and organization of the purported enterprise. *Conte v. Newsday*, 703 F. Supp. 2d 126, 134 (E.D.N.Y. 2010) (dismissing a RICO claim for failure to allege the structure and organization of the enterprise); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007) ("The Amended Complaint contains virtually no allegations regarding the structure and organization of the alleged [enterprise], and leaves a plethora of unanswered questions regarding the membership, purpose, and structure of that entity."). These requirements are necessary to show that the enterprise functions "as a unit." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (finding no enterprise where plaintiffs "failed to provide [the court] with any solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise from which [the court] could fairly conclude that its members functioned as a unit" (internal quotation marks and citations omitted)); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) (holding that the plaintiff failed to sufficiently allege an enterprise because no allegations demonstrated how defendants "improperly functioned as a unit"). Merely "list[ing] a variety of defendants" does not amount to an enterprise. *Conte*, 703 F. Supp. 2d at 134. Plaintiff did not allege any details about the structure and organization of the purported enterprise, and her RICO claim fails for this reason as well. *See Conte*, 703 F. Supp. 2d at 134; *Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d at 475.

**2.    Plaintiff Does Not Adequately Plead The Existence of Predicate RICO Acts**

A pattern of racketeering requires "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."

18 U.S.C. § 1961(5).  "Racketeering activity," in turn, is defined to include a variety of criminal

acts under state and federal law, including mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C.

§ 1343, and money laundering, 18 U.S.C. § 1956.  18 U.S.C. § 1961(1).

To show mail or wire fraud, a complaint must show "(1) the existence of a scheme to

defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of

interstate mails or transmission facilities in furtherance of the scheme."  *S.Q.K.F.C., Inc. v. Bell

Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).  Even though a plaintiff may identify

multiple instances of mail fraud, "multiple acts of mail fraud in furtherance of a single episode of

fraud involving one victim and relating to one basic transaction cannot constitute the necessary

pattern."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014).  These

claims sound in fraud, and a plaintiff must therefore satisfy Rule 9(b) of the Federal Rules of Civil

Procedure, which requires that the circumstances constituting fraud be stated "with particularity."

*Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).  A claim of

mail fraud must thus typically specify the content, date, and place of any misrepresentations, and

the identity of the persons making them.  *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172-73

(2d Cir. 1990); *see also Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999).

When a case has multiple defendants, the plaintiff must allege facts specifying each defendant's

contribution to the fraud.  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d

Cir. 1987). Finally, "RICO claims premised on mail or wire fraud must be particularly scrutinized

because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that,

upon closer scrutiny, do not support it." *Gross*, 628 F. Supp. 2d at 493.

To show money laundering, a complaint must show "(1) that the defendant conducted a

financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful

activity as defined in § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds." *United States v. Maher*, 108 F.3d 1513, 1527-28 (2d Cir. 1997).  The underlying "unlawful activity" alleged to make out a violation of 18 U.S.C. § 1956 must be distinct from the act of money laundering itself.  *United States v. Szur*, 289 F.3d 200, 213-14 (2d Cir. 2002).

Here, Plaintiff makes only conclusory assertions that the requisite two acts are present. When Plaintiff alleges that the Spiewak Defendants engaged in mail fraud, wire fraud, and money laundering, she simply recites the standard definitions of those crimes and does not provide any specific instances of such acts.  Am. Compl. ¶ 58.  Plaintiff refers generically back to her earlier allegations to support her claim, but even the full recitation of allegations does not reveal the requisite acts.  *See id.* at ¶¶ 23-37.  The allegations only reference a mailing in the allegation that Plaintiff had made her son her attorney-in-fact to deal with this case.  *See id.* at ¶ 24.  The allegations do not identify any specific instances of wire transfers or money laundering.  *See id.* at ¶¶ 23-37.  Instead, Plaintiff's case is mostly based on allegations that the Spiewak Defendants wrote fake checks and fictitious invoices, but these allegations are not accompanied by assertions that the checks or invoices were transmitted by mail or by wire.  *See id.*  To the extent that the fraudulent checks or fictitious invoices amounted to improper financial transactions, Plaintiff makes no allegations of an underlying "unlawful activity" to bring the transactions within the definition of money laundering.  *See id.*  At no point does the Amended Complaint identify anything specific regarding any acts, and as a result, none of Plaintiff's allegations come close to

providing the particularity required by Rule 9(b). *See id.* Plaintiff therefore fails to identify the required two acts for a RICO claim.

> **3.** **Plaintiff Does Not Allege A Pattern Of Racketeering Activity Because The Predicate Acts Are Not Related**

In addition to identifying at least two predicate acts, a plaintiff also has to show that those predicate acts are related. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Predicate acts are related when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. The Second Circuit has further held that "predicate acts must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006) (citation omitted).

To show that the predicate acts are vertically related to the RICO enterprise, the plaintiff must show either that the defendant "was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise," or that "the predicate offenses are related to the activities of that enterprise." *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir.1992). A predicate act is related to the enterprise if "the offense related to the activities of the enterprise." *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010). Meanwhile, one way to show that predicate acts are horizontally related to each other is to show that the "each predicate act is related to the enterprise." *United States v. Polanco*, 145 F.3d 536, 541 (2d Cir.1998).

Here, however, Plaintiff lacks both an enterprise and the requisite two predicate acts, so Plaintiff is understandably unable to show any relatedness. Nonetheless, to the extent that the Spiewak Defendants engaged in wrongdoing, it was not related to an overall scheme involving an

enterprise's legitimate business, but was simply the result of one-off examples of purported theft from the company.  *See* Am. Compl. ¶¶ 23-37.  Without relatedness, the RICO claim fails.

### 4.    Plaintiff Does Not Allege A Pattern Of Racketeering Activity Because The Predicate Acts Lack Continuity

A plaintiff must also show that the predicate acts "amount to, or . . . otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc.*, 492 U.S. at 240.  Continuity is "centrally a temporal concept" that "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241-42.

Closed-ended continuity requires a "series of related predicates extending over a substantial period of time." *Spool*, 520 F.3d at 184 (citation omitted).  Since the Supreme Court decided *H.J. Inc.*, the Second Circuit has "never held a period of less than two years to constitute a substantial period of time." *Id.* (citation omitted).  "[W]hile two years may be the minimum duration necessary . . . , the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Capital*, 385 F.3d at 181.  The relevant period of time for evaluating continuity is "the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated." *Spool*, 520 F.3d at 184. The Second Circuit has also identified several other factors for a court to consider in determining whether closed-ended continuity exists, "including, inter alia, . . . the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir.1995); *see also Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 998 (E.D.N.Y. 1995).

Comparatively, open-ended continuity requires the plaintiff to show that "a threat of continuity exists [by looking] first to the nature of the predicate acts alleged or to the nature of the

enterprise at whose behest the predicate acts were performed." *GICC Capital Corp.*, 67 F.3d at 466. Where the predicate acts alleged are associated with a business that is not inherently unlawful, "courts generally have found no threat of continuing criminal activity arising from [the nature of the] conduct that extended over even long[ ] periods." *Cofacredit*, 187 F.3d at 243. Similarly, when an enterprise primarily conducts a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.* Some predicate acts are part of schemes that are "inherently terminable," such as the looting of a company's assets, and those schemes do not have open-ended continuity. *GICC Capital Corp.*, 67 F.3d at 466. In the same vein, irregular fraudulent transactions are insufficient to establish a business model based on fraud. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407 (S.D.N.Y. 2013).

"Courts in this Circuit have held repeatedly that allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property—as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate closed-ended continuity, and thus to satisfy "pattern" element of a plausible RICO claim." *Gross*, 628 F. Supp. 2d at 494.

In this case, Plaintiff's allegations do not show closed-ended continuity. Plaintiff does not contain specific dates for many of her allegations, but to the extent that she identifies a timeframe for her claims, many of the examples of purported fraud began in 2017, Am. Compl. ¶ 27, and ended in 2019 when Plaintiff discovered the purportedly fraudulent conduct and hired counsel, *id.* at ¶ 40. This time period was only two years, and during that limited time, Plaintiff alleges that

the Spiewak Defendants took money from only one victim: Kwik Ticket, and to the extent that hurt a shareholder, it only hurt one shareholder—Plaintiff. *Id.* at ¶¶ 1, 10. Additionally, Plaintiff alleges a limited scheme that is relatively simple, and is based only on allegations that the three Spiewak Defendants occasionally wrote themselves fraudulent checks justified by fictitious invoices. *See* Am. Compl. ¶¶ 23-37. These purported predicate acts occurred on an irregular basis, and were isolated and sporadic events. *See id.*

Plaintiff's allegations also do not support a showing of open-ended continuity. Kwik Ticket is a legitimate business formed in 1979 with approximately $7 million in revenue per year. Am. Compl. ¶¶ 9, 19, 21. Plaintiff does not allege that Kwik Ticket exists solely to be a criminal enterprise. *See id.* Although Plaintiff bases her complaint on allegations of fraudulent checks and fictitious invoices, these incidents were one-off events that were not built into Kwik Ticket's legitimate business model. *See id.* at ¶¶ 18-53. Additionally, any purported "looting" of Kwik Ticket's funds was not built into the structure of the company, and the allegations merely show actions that are "inherently terminable" based on the company's revenue. *See id.* Although Plaintiff speculates that the Spiewak Defendants can resume their purportedly fraudulent conduct, she does so simply based on the fact that the State Court action issued a temporary restraining order preventing her son from interfering with the business operations at Kwik Ticket. *See id.* at ¶¶ 44-45. This merely shows the extent to which Plaintiff and her son overstepped their role in Kwik Ticket's management, and it says nothing about the way that Kwik Ticket currently operates. *See id.* Overall, without closed- or open-continuity, Plaintiff fails to show a pattern of predicate acts for her RICO claim.

**5.** **Plaintiff Does Not Allege Interstate Commerce Because All Relevant Activities Occurred In New York**

All of RICO's subsections require an enterprise that "is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(a)-(c). The interstate commerce prong is RICO's "jurisdictional element."  *United States v. Barton*, 647 F.2d 224, 233 (2d Cir. 1981).  Here, Plaintiff's Amended Complaint states that the relevant Defendants live and transact in New York, and it does not allege that any of the purported fraudulent acts involved interstate commerce.  *See* Am. Compl. ¶ 10.  Plaintiff's allegations are therefore not sufficient to establish interstate commerce.

**B.** **Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(d) Because Her RICO Claim Under 18 U.S.C. § 1962(c) Failed As Well**

Pursuant to 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Accordingly, when a plaintiff fails to "state a cause of action for substantive violations of RICO, [the plaintiff also] does not set forth a conspiracy to commit such violations."  *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), vacated on other grounds by *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 119 S. Ct. 493 (1998); *see also First Capital*, 385 F.3d at 182 (dismissing a claim under 18 U.S.C. § 1962(d) because the plaintiff failed to allege a substantive violation of RICO).  Here, as discussed above, Plaintiff failed to state a claim for a substantive RICO violation under 18 U.S.C. § 1962(c), and she therefore has no basis to state a corresponding claim under 18 U.S.C. § 1962(d).  *See Discon*, 93 F.3d at 1064.  This Court must therefore dismiss this claim as well.

**C.** **Plaintiff Fails To State A Claim For Conversion Because Control Of A Business Is Not "Property" Under A Conversion Claim**

In order to assert a conversion claim, a plaintiff must establish that the defendant "intentionally and without authority, assumes or exercises control over personal property

belonging to someone else, interfering with that person's right of possession." *Colavito v N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006).  The property at issue in a conversion claim "must constitute identifiable tangible personal property; real property and interests in business opportunities will not suffice." *ARB Upstate Commc'ns LLC v R.J. Reuter, L.L.C.*, 93 A.D.3d 929, 931-32 (2012).  An ownership share in a company is "a type of intangible property that could not be the subject of a conversion claim." *Saleeby v. Remco Maint., LLC*, 148 A.D.3d 570, 570-71 (1st Dep't 2017); *see also C & B Enters. USA, LLC v. Koegel*, 136 A.D.3d 957, 958-59 (2d Dep't 2016) (holding that the alleged "interference with the right of [a company's] possession of its Property" and interference "with [the individual plaintiff's] right to possession of his ownership of [the company]" could not be used to establish conversion).  Similarly "an action for conversion of money will lie [only] where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *High View Fund, L.P. v. Hall,* 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998).  "More particularly, if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action." *Id.* (dismissing conversion claim alleging that manager misappropriated $1 million investment).

Here, Plaintiff alleges that Mr. Spiewak and Ms. Jacobovits "exercised the right of ownership over property belonging to the Company, to the exclusion of the Company's rights." Am. Compl. ¶ 103.  But these allegations about an individual plaintiff's purported ability to own and control a company do not provide the requisite "property" that a conversion claim addresses. *See Saleeby*, 148 A.D.3d at 570-71.  This Court should therefore dismiss Plaintiff's claim for conversion.

**D.      Plaintiff Fails To State A Claim For A Preliminary And Permanent Injunction Because There Is No Irreparable Harm**

Claims for a preliminary or permanent injunction require a plaintiff to establish that it will be irreparably injured absent the injunctive relief. *Aetna Ins. Co. v. Capasso*, 75 N.Y.2d 860, 862 (1990); *Caruso v. Bumgarner*, 120 A.D.3d 1174, 1175 (2d Dep't 2014). To establish irreparable harm, a plaintiff must establish "an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation omitted).

Here, however, this Court has already ruled that no irreparable harm is present in Plaintiff's claims. When Plaintiff moved for a preliminary injunction and a temporary restraining order, this Court ruled that (1) there was no irreparable harm because any injury could be compensable through money damages and (2) there was no irreparable harm because Plaintiff had delayed bringing her claims in federal court until after she lost multiple rulings in the related state court proceedings. The Court held:

> Plaintiff argues that without a TRO she will be irreparably harmed by the loss of "her rightful voice in management" and concomitant ability to "protect [against] the theft and misconduct" that Defendants allegedly perpetrated. But whatever "theft" of Kwik Ticket's assets occurred, if any, the ensuing harm to Plaintiff is redressable through an award of money damages at the end of trial. *See A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 337 (S.D.N.Y. 2013) (claims for "breaches fiduciary duty [and] waste of company assets . . . are classic money damages lawsuits"). "[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 78-79 (2d Cir.1990); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("Where money damages are adequate compensation a preliminary injunction should not issue." (internal quote omitted)).

> Also, while Plaintiff states that the "essence" of her TRO application is the "restoration of the [2019] corporate resolution," that resolution expired by its own terms in October 2019, five months before Plaintiff sought injunctive relief. If Plaintiff sought to prevent some injury that followed from the expiration of the 2019 resolution, she fails to adequately explain why she waited nearly half a year after the resolution expired to do so. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("Courts typically decline to grant

> preliminary injunctions in the face of unexplained delays of more than two months.").  Notably, Plaintiff brought this suit (and moved for injunctive relief) only after Kwik Ticket filed its own complaint in New York state court and successfully moved for [a] TRO against Plaintiff's son and attorney-in-fact, Issac Shamah.  That Plaintiff failed to seek injunctive relief until after she received an unfavorable decision in state court further "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995).

Dkt. No. 32 at 3-5 (footnotes omitted).  This Court's prior ruling remain accurate at the motion to dismiss stage, where Plaintiff makes only a cursory allegation that irreparable injury is present.  Am. Compl. ¶ 110.  Therefore, because Plaintiff is unable to show any irreparable harm, her preliminary and permanent injunction claim must be dismissed.

### III. This Court Should Strike Paragraphs 49 To 53 And Corresponding Exhibits N And O Because They Are Immaterial, Impertinent, And Scandalous

Rule 12(f) of the Federal Rules of Civil Procedure states that this Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  This rule is "designed to reinforce the requirement in Rule 8(c) that pleadings be simple, concise, and direct."  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D. N.Y. 2003) (citation omitted).  Allegations in a complaint "may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones."  *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) (citations omitted); *see also* 5A Wright, Miller & Marcus, Fed. Prac. & Proc.: Civil 2d § 1382, at 714 (West 1994 & Supp. 2001) ("[S]candalous allegations . . . will often be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations.").  Accordingly, courts routinely strike allegations of a sexual nature that are not relevant to a plaintiff's claims.  *E.g.*, *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 517 (S.D.N.Y. 2016) (striking allegations about the employer's alleged sexual harassment of the

plaintiff's coworker because the alleged harassment was not relevant to plaintiff's claim for employment discrimination based on national origin and age); *Parrish v. Sollecito*, No. 01 CIV 5420 (VM), 2002 WL 1072227, at *1-2 (S.D.N.Y. May 28, 2002) (striking allegations about an extramarital affair with one of his employees for not being relevant to the plaintiff's allegations about the hostile work environment she allegedly experienced); *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 305, 317-18 (S.D.N.Y. 2001) (striking allegations about the defendant's alleged sexual and racial harassment of women and minorities because such allegations were not relevant to the hostile work environment claim brought by an older white man).

Here, Plaintiff amended the complaint with the sole and express purpose of attempting to shame Mr. Spiewak by including purported transcripts of off-color jokes that Mr. Spiewak allegedly made.  Am. Compl. ¶¶ 49-53.  These scandalous allegations have absolutely no bearing on Plaintiff's allegation that Mr. Spiewak embezzled money from Kwik Ticket.  Plaintiff even uploaded surreptitious recordings of this off-color humor to YouTube, and included the links to the YouTube recordings in the Amended Complaint.  Am. Compl. Exs. N, O.  This type of practice is an abuse of Mr. Spiewak and the Court, and has no place in the Eastern District.

Plaintiff attempts to justify including the transcripts of these alleged conversations by claiming that Kwik Ticket paid settlement amounts and legal fees in connection with these alleged conversations.  This allegation is false, but even if it were true, it does not justify in any way including alleged transcripts of the off-color humor and posting them to YouTube.  Plaintiff could have made the same exact claim by simply alleging that Mr. Spiewak caused Kwik Ticket to pay for settlements based on his personal conduct. These allegations are more prejudicial than informative, and this Court should accordingly strike Paragraphs 49 to 53 of the Amended

Complaint, and Exhibits N & O pursuant to Rule 12(f).  *See Donahue*, 208 F. Supp. 3d at 517;

*Parrish*, 2002 WL 1072227, at *1-2; *Smith*, 148 F. Supp. 2d at 305, 317-18.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Spiewak Defendants' Motions, along

with such other and further relief as the Court deems just, proper, and equitable.


Dated: New York, New York
        July 9, 2021
                                        **REED SMITH LLP**


                                        By:  /s/ Samuel Kadosh
                                             Joseph Tuso
                                             Samuel Kadosh
                                             599 Lexington Avenue
                                             New York, New York 10022
                                             Tel.: (212) 521-5400
                                             Fax: (212) 521-5450

                                             *Attorneys for Defendants*
                                             *Larry Spiewak, Mindy Spiewak, and Malkah*
                                             *Jacobovits*