**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- X
KWIK TICKET INC.,                              :
  by its 50% owner, FLORENCE SHAMAH,           :
  and FLORENCE SHAMAH, Individually,           :        Case No. 20-cv-01201-FB-SJB
                                               :
                         Plaintiff,            :
                                               :
            -against-                          :
                                               :
LARRY SPIEWAK, et al.,                         :
                                               :
                         Defendants.           :
-------------------------------------------------- X
```

**REPLY MEMORANDUM OF**
**DEFENDANTS LARRY SPIEWAK, MINDY SPIEWAK, AND MALKAH JACOBOVITS**
**IN SUPPORT OF THEIR MOTION TO COMPEL, MOTION TO DISMISS, AND**
**MOTION TO STRIKE**

**REED SMITH LLP**
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendants*
*Larry Spiewak, Mindy Spiewak, and Malkah Jacobovits*

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I.   This Court Should Grant The Spiewak Defendants' Motion To Compel ..........................2

    A.   Plaintiff Has Repeatedly Asserted In This Court That The Shareholders'
    Agreement Is A Valid And Binding Agreement, And This Court Should
    Disregard Her Eleventh-Hour Assertion That It Is A Non-Binding Draft...............2

    B.   Even If This Court Considers Plaintiff's New Factual Assertions, The
    Arbitration Provision In The Shareholders' Agreement Is Still Binding ...............5

    C.   This Case Fits Squarely Within The Broad Arbitration Provision In The
    Shareholders' Agreement......................................................................................9

    D.   The Spiewak Defendants Are Not Judicially Estopped From Invoking The
    Arbitration Provision In The Shareholders' Agreement.......................................11

II.   Alternatively, This Court Should Grant The Spiewak Defendants' Motion To
    Dismiss........................................................................................................................14

    A.   Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(c)......................14

        1.   Plaintiff Continues To Conflate The Spiewak Defendants With The
        Required "Enterprise" ................................................................................ 14

        2.   Plaintiff Is Unable To Identify The Required Predicate Acts................... 16

        3.   Plaintiff Does Not Show That Any Predicate Acts Were Related............ 17

        4.   Plaintiff Does Not Show That Any Predicate Acts Had Closed-
        Ended Or Open-Ended Continuity............................................................. 17

        5.   Plaintiff Does Not Show Interstate Commerce......................................... 18

    B.   Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(d).....................19

    C.   Plaintiff Did Not Identify Any Tangible Personal Property For A
    Conversion Claim ...............................................................................................19

    D.   Plaintiff Is Unable To Show Any "Irreparable Harm" For An Injunction ...........20

III.   This Court Should Strike The Amended Complaint's Immaterial, Impertinent,
    And Scandalous Material ..............................................................................................20

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................18

*Bamira v. Greenberg*,
256 A.D.2d 237 (1st Dep't 1998) .............................................11

*Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*,
41 N.Y.2d 397 (1977) ...............................................................6

*C & B Enters. USA, LLC v. Koegel*,
136 A.D.3d 957 (2d Dep't 2016) ..............................................20

*CBRE, Inc. v. Pace Gallery of N.Y., Inc.*,
No. 1:17-cv-02452-ALC-SN, 2021 WL 1198644 (S.D.N.Y. Mar. 30, 2021)..........................8

*Cedric Kushner Promotions Ltd. v. King*,
533 U.S. 158 (2001)..................................................................15

*Cell Tower Lease Acquisition, LLC v. Rego Park N.H. Ltd.*,
144 A.D.3d 453 (1st Dep't 2016) .............................................13

*Cofacredit S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999).....................................................15

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
58 F.3d 16 (2d Cir. 1995) ...........................................................9

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000).......................................................14

*DeRosa v. Nat'l Envelope Corp.*,
595 F.3d 99 (2d Cir. 2010).................................................11, 13

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004).....................................................19

*Flores v. Lower E. Side Serv. Ctr., Inc.*,
4 N.Y.3d 363 (2005) ...................................................................5

*In re Fosamax Prod. Liab. Litig.*,
707 F.3d 189 (2d Cir. 2013)................................................2, 4, 5

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F. Supp. 2d 300 (S.D.N.Y. 2009).................................................................17

*G-I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002).................................................................20

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc.*,
   6 N.Y.3d 371 (2006) ...............................................................................6, 7, 9

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)...........................................................14, 15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989).............................................................................17, 18

*Kamin v. Koren*,
   621 F. Supp. 444 (S.D.N.Y. 1985)....................................................................13

*Kowalchuk v. Stroup*,
   61 A.D.3d 118 (1st Dep't 2009) ........................................................................8

*Lumhoo v. Home Depot USA, Inc.*,
   229 F. Supp. 2d 121 (E.D.N.Y. 2002) .................................................................4

*Maye v. Smith Barney Inc.*,
   897 F. Supp. 100 (S.D.N.Y. 1995)......................................................................5

*Matter of Municipal Consultants & Publs. v. Town of Ramapo*,
   47 N.Y.2d 144 (1979) ....................................................................................6

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc.*,
   369 F.3d 645 (2d Cir. 2004)............................................................................10

*Rojas v. Roman Catholic Diocese of Rochester*,
   660 F.3d 98 (2d Cir. 2011)...............................................................................4

*Salinas v. United States*,
   522 U.S. 52 (1997).......................................................................................19

*Schwartz v. Greenberg*,
   304 N.Y. 250 (1952) ......................................................................................9

*Smith v. Lehman Brothers, Inc.*,
   No. 95 CIV. 10326 (JSM), 1996 WL 383232 (S.D.N.Y. July 8, 1996) ...................5

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)............................................................................18

*Svenningsen v. Ultimate Prof'l Grounds Mgmt., Inc.*,
 No. 14 Civ. 5161 (NSR), 2017 WL 3105871 (S.D.N.Y. July 20, 2017) ................................12

*Tabas v. Tabas*,
 47 F.3d 1280 (3d Cir. 1995) ................................................................16

*Thomas v. Pub. Storage, Inc.*,
 957 F. Supp. 2d 496 (S.D.N.Y. 2013) ................................................................6

*Trautz v. Weisman*,
 809 F. Supp. 239 (S.D.N.Y. 1992) ................................................................16

*Tuscano v. Tuscano*,
 403 F. Supp. 2d 214 (E.D.N.Y. 2005) ................................................................15

*United States v. Applins*,
 637 F.3d 59 (2d Cir. 2011) ................................................................19

*United States v. Int'l Longshoremen's Ass'n*,
 518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................................15

*Utz v. Correa*,
 631 F .Supp. 592 (S.D.N.Y. 1986) ................................................................16

*Wagner Acquisition Corp. v. Giove*,
 250 A.D.2d 857 (2d Dep't 1998) ................................................................6, 7

*Wexner v. First Manhattan Co.*,
 902 F.2d 169 (2d Cir. 1990) ................................................................16

*Williams v. Affinion Grp., LLC*,
 889 F.3d 116 (2d Cir. 2018) ................................................................19

*Zirogiannis v. Seterus, Inc.*,
 221 F. Supp. 3d 292 (E.D.N.Y. 2016) ................................................................5

**Statutes**

18 U.S.C. § 1341 ................................................................16

18 U.S.C. § 1343 ................................................................16

18 U.S.C. § 1956 ................................................................17

18 U.S.C. § 1962(c) ................................................................14, 19

18 U.S.C. § 1962(d) ................................................................19

N.Y. Bus. Corp. Law § 620(a) ................................................................7, 8

N.Y. Penal Law § 175.05 ........................................................................................................17

N.Y. Penal Law § 175.10 ........................................................................................................17

N.Y. Penal Law § 180.03 ........................................................................................................17

**Rules**

CPLR 7502(c) ..........................................................................................................................13

## INTRODUCTION[1]

This case should be compelled to arbitration because the parties negotiated and agreed upon a broad and binding arbitration provision in the Shareholders' Agreement. Despite relying on the Shareholders' Agreement in her sworn affirmation, in her Amended Complaint, and in her motion for a TRO, Plaintiff now disavows that agreement and claims that it is an inoperative "draft." The Court should disregard this transparent double-talk, which is directly contradicted by Plaintiff's prior statements and pleadings. Not liking a provision in an agreement is no reason to misrepresent facts to the Court. Even if Plaintiff's new position were accurate (which it is not), the Shareholders' Agreement still remains legally binding as Plaintiff objectively demonstrated acceptance of the agreement. Thus, Plaintiff's claims must be compelled to arbitration.

Alternatively, this Court should dismiss several of Plaintiff's claims. Crucially, Plaintiff provides no legal basis for recasting her "garden-variety" fraud claims (and weak ones at that) as federal RICO claims. She asserts that the whole of Kwik Ticket is a criminal enterprise, but then also refers to Kwik Ticket as a "victim" of the alleged theft. Kwik Ticket cannot be both the perpetrator and victim of the alleged criminal enterprise. For this and other reasons, Plaintiff's RICO claims must be dismissed. Plaintiff also fails to defend her claims for conversion and for injunctive relief, which are simply not applicable here. Finally, Plaintiff's purported justification for including scandalous and impertinent materials in the amended complaint does not withstand scrutiny, and those allegations must be struck.

For these reasons, and as discussed below, the Court should grant the Spiewak Defendants' Motions to Compel Arbitration, Dismiss, and Strike.

---

[1] This Court granted leave to file a brief of up to 20 pages on October 12, 2021. Capitalized terms not defined in this brief shall have the meaning given to them in the Spiewak Defendants' moving brief.

## ARGUMENT

I.    **This Court Should Grant The Spiewak Defendants' Motion To Compel**

    A.    **Plaintiff Has Repeatedly Asserted In This Court That The Shareholders' Agreement Is A Valid And Binding Agreement, And This Court Should Disregard Her Eleventh-Hour Assertion That It Is A Non-Binding Draft**

From the very start of this case, Plaintiff and her son (and purported attorney-in-fact), Isaac Shamah, repeatedly invoked the Shareholders' Agreement as a basis for her misplaced derivative claims. But conveniently, Plaintiff now claims that the Shareholders' Agreement was a non-binding "draft." *See* Opp. at 2-5, 8-19. This Court should disregard Plaintiff's wholesale reversal because it is well established that a party cannot defeat a motion by submitting an affidavit in opposition that is contradictory to the party's prior factual assertions. *See In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 195 (2d Cir. 2013).

Plaintiff expressly relied on the Shareholders' Agreement in her March 30, 2020, affirmation in this Court in support of her request for a TRO and preliminary injunction. Dkt. Nos. 29, 29-5. In her affirmation, Plaintiff unequivocally premised her claims on the Shareholders' Agreement by stating that "Mr. Spiewak's unilateral actions are particularly offensive *in light of [the] Stockholder's Agreement* (Exhibit E hereto), which specifically states that 'the change in salary or other compensation to be received by any Shareholder'—which includes me—requires the consent of at least three directors (Exh. E, Sec. 3(c)(ii))), as does any 'other major change in the business of the Corporation.' (*Id.*, sec. 3(c)(viii))." Dkt. No. 29 at 4 (emphasis added). Plaintiff then accused Mr. Spiewak of "disregard[ing] the Stockholder's Agreement." *Id.* She also argued that the Shareholders' Agreement had not been replaced by any other documents: "As to the latter Agreement, I note that the parties have agreed that '[n]o provisions hereof may be altered, waived,

amended or revoked, except in a writing to be signed by the party to be charged therewith.' There are no writings which preempt the clear terms of the Stockholder's Agreement." *Id.*[2]

Plaintiff's son (and purported attorney-in-fact), Isaac Shamah, also submitted the Shareholders' Agreement to this Court in support of Plaintiff's request for a TRO and preliminary injunction. Dkt. Nos. 12, 12-2. Most notably, Isaac Shamah swore in his affidavit that: "The Company's stockholder's agreement is structured such that each side gets to appoint two of the four directors (Exhibit B, Section 3(a))." Dkt. No. 12 at 3. Mr. Shamah also stated that he had issued a "Notice of Designation of Directors" on March 17, 2020 pursuant to the Shareholders' Agreement that stated:

> Reference is made to the stockholder's agreement of Swift Ticket Inc., now known as Kwik Ticket Inc. (the "Company"), dated as of March 13, 1980 ("Agreement"). . . .
>
> PLEASE TAKE NOTICE that, pursuant to Section 3(a) of the Agreement, the Shamah Group (the interests of which are owned 100% by Florence Shamah) hereby designates the following as Directors of the Company: Florence Shamah [and] Isaac D. Shamah
>
> PLEASE TAKE FURTHER NOTICE that, pursuant to Section 3(b) of the Agreement, ISAAC D. SHAMAH is hereby designated as the spokesman on behalf of the Shamah Group.

Dkt. No. 12-3. At no point does Isaac Shamah state that the Shareholders' Agreement was allegedly a non-operational "draft" or that it was not properly signed. *See* Dkt. No. 12.

However, now, in a transparent attempt to avoid the arbitration provision in the Shareholders' Agreement, Plaintiff posits that the Shareholders' Agreement is inoperative. Opp. 8-14. Plaintiff's son, Isaac Shamah, submitted a declaration stating that the Shareholders' Agreement was only a "draft" agreement even though he personally executed it. His basis appears

---

[2] In her briefing for a TRO and preliminary injunction, Plaintiff similarly asserted that her claims were based on the Shareholders' Agreement: "The core of this motion for a preliminary injunction is that Mr. Spiewak has taken total control of the Corporation—including finances and major decisions—*in violation of . . . the Stockholder's Agreement.*" Dkt. No. 28 at 4 (emphasis added).

to be that he "forgot about it" and therefore his lack of memory voids it. *See* Isaac Shamah Decl. at 1-4. His purported lack of memory is puzzling, though, given that his declaration would suggest amazing recall when describing in detail events that supposedly happened over 40 years ago when Jimmy Carter was President.[3]

Isaac Shamah's new declaration should be disregarded. The Second Circuit has long recognized that a party opposing a motion may not attempt to defeat the motion by submitting an affidavit that is contradictory to the party's prior factual assertions. *See Fosamax*, 707 F.3d at 195 ("[W]e are also aware of the greater facility with which a party can craft an affidavit, or shape deposition testimony, when evidentiary gaps have been identified in an adversary's summary judgment arguments."). When the facts asserted in such an affidavit are "so contradictory that doubt is cast upon their plausibility," the Court should disregard those facts to prevent "the mendacious [from] seek[ing] windfalls in the litigation lottery." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011); *see also Fosamax*, 707 F.3d at 193; *Lumhoo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 143 (E.D.N.Y. 2002).

Here, Isaac Shamah's new factual assertions about the Shareholders' Agreement directly contradict his and Plaintiff's prior sworn assertions to this Court. *See* Dkt. Nos. 12, 29. Plaintiff remains conspicuously silent about the new factual assertions that her son is making, and notably, she does not submit a declaration of her own to address these new, glaringly inconsistent facts. Now that Plaintiff realizes that her claims are governed by the arbitration provision in the Shareholders' Agreement, she and her son are spinning their wheels in reverse to get out of that

---

[3] Plaintiff claims that her counsel's reliance on the Shareholders' Agreement in a pre-litigation demand letter was a mistake, *see* Opp. at 4, but she does not, and cannot, explain the discrepancies between her and her son's prior sworn statements, and their current position.

agreement. The Court should therefore disregard Isaac Shamah's new, contradictory, and unsupportable declaration. *See Fosamax*, 707 F.3d at 193.

### B.   Even If This Court Considers Plaintiff's New Factual Assertions, The Arbitration Provision In The Shareholders' Agreement Is Still Binding

Although Plaintiff now asserts that the Shareholders' Agreement is a mere "draft," this legal conclusion does not flow from Isaac Shamah's new declaration. As an initial matter, Plaintiff does not dispute—and cannot avoid—the fact that Mr. Spiewak, Kwik Ticket, and Isaac Shamah all signed the Shareholders' Agreement. Dkt. No. 12-2 at 8. Mr. Spiewak is a named party in this case and Kwik Ticket is a nominal party, and those parties are accordingly required to arbitrate their disputes. *See, e.g.*, *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 108 (S.D.N.Y. 1995) (a party is bound by an arbitration agreement by signing it); *Smith v. Lehman Brothers, Inc.*, No. 95 CIV. 10326 (JSM), 1996 WL 383232, at *1 (S.D.N.Y. July 8, 1996) (same). Additionally, Isaac Shamah signed the Shareholders' Agreement, and even though he claims to no longer be a shareholder, his obligation to arbitrate his disputes transferred to his mother if she took assignment of his shares. *See* Dkt. No. 12-2 at ¶¶ 5(a), 14(b). Thus, the Shareholders' Agreement was adequately signed to require arbitration in this case.[4]

On a more fundamental level, though, neither New York contract law nor the Federal Arbitration Act require the Shareholders' Agreement or arbitration provision to be fully executed to be valid. New York law has "long held that a contract may be valid even if it is not signed by the party to be charged . . . ." *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 368 (2005). "In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by

---

[4] Plaintiff asserts that the Spiewak Defendants cannot address the validity of the Shareholders' Agreement in their reply brief because it would be a new argument. However, the Spiewak Defendants are merely responding to Plaintiff's new arguments and factual assertions, which is the very purpose of a reply brief. *See Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016).

their expressed words and deeds . . . ." *Brown Bros. Elec. Contrs. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399-400 (1977); *see also Matter of Municipal Consultants & Publs. v. Town of Ramapo*, 47 N.Y.2d 144, 148-50 (1979).

These general principles of contract law apply in the arbitration context. *See God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc.*, 6 N.Y.3d 371, 373-74 (2006) ("[W]e reiterate our long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed, when it is evident that the parties intended to be bound by the contract."); *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) ("The FAA requires only that an arbitration agreement be in writing, not that it be signed."). A court's "concern should [be] merely [] whether the parties made a valid agreement to arbitrate and not whether the contract as a whole was unenforceable." *Wagner Acquisition Corp. v. Giove*, 250 A.D.2d 857, 857-58 (2d Dep't 1998).

Here, the Shareholders' Agreement is a valid contract, even if Isaac Shamah did not obtain the signatures of the other Shamah Group shareholders, because Isaac Shamah's declaration demonstrates an objective manifestation of the parties to enter into the Shareholders' Agreement. Isaac Shamah actually takes credit for allegedly taking the initiative to draft the Shareholders' Agreement, says that *he* obtained Mr. Spiewak's signature, and then *he* signed the agreement himself. *See* Isaac Shamah Decl. at 2-3. Isaac Shamah further admits that the Shareholders' Agreement "was designed to govern and bind all shareholders." *Id.* at 3. He claims that he did not obtain the signatures of the other Shamah Group shareholders, but that was only because he "forgot" to do so, and not because they had intended to reject the Shareholders' Agreement. *See id.* Additionally, Isaac Shamah took these actions not just for himself, but for the other Shamah Group shareholders because his father had delegated to him the responsibility of "tak[ing] care of

setting up the business legally." *See id.* at 2. Isaac Shamah also allegedly has power-of-attorney for his mother, who is Plaintiff in this case. *See id.* at 1.

Although Plaintiff argues that the terms of the Shareholders' Agreement were "never followed" since the execution of the Shareholders' Agreement, Opp. at 12, both Plaintiff and Isaac Shamah have demonstrated that they were aware of the Shareholders' Agreement and believed it to be valid and enforceable. In March 2020, Plaintiff, through her son, issued the "Notice of Designation of Directors" pursuant to Sections 3(a) and 3(b) of the Shareholders' Agreement. Dkt. No. 12-3. Later, both Plaintiff and her son submitted separate declarations to this Court asserting that the Shareholders' Agreement was binding in this case. Dkt. Nos. 12, 12-2, 29, 29-5. Based upon these acknowledgements of the validity of the Shareholders' Agreement, Plaintiff has objectively demonstrated an intent to be bound by it. *See God's Battalion*, 6 N.Y.3d at 373-74.

Plaintiff does not address this body of law, but instead argues that the Shareholders' Agreement is invalid because it needed to be signed by all of the shareholders under statutory law and under the text of the agreement itself. *See* Opp. at 8-14. *Id.* Both of her arguments fail.

First, no statute requires the Shareholders' Agreement to be signed by all of the Shamah Group shareholders. The New York statute of frauds, General Obligations Law 5-701, does not contain any provisions applicable to the Shareholders' Agreement. Plaintiff instead asserts that N.Y. Bus. Corp. Law § 620(a) requires "all voting agreements between shareholders" to be signed, but Plaintiff only contends that this statute affects the validity of Section 3(a) of the Shareholders' Agreement. Opp. at 12. However, as a matter of law, when examining the validity of an arbitration provision, this Court's only concern should be about the validity of the arbitration provision, and not the contract as a whole. *See Wagner Acquisition*, 250 A.D.2d at 857-58. Thus, regardless of the effect that § 620(a) may have on Section 3(a) of the Shareholders' Agreement, § 620(a) would

not affect the validity of the arbitration provision, and that is the determinative fact for a motion to compel. *See id.* Additionally, even if Section 3(a) were invalid under § 620(a), Section 14(a) of the Shareholders' Agreement contains a "no waiver" clause that would leave in place the arbitration provision in Section 13. *See* Dkt. No. 12-2 at 7-8.

Second, the Shareholders' Agreement itself does not require signatures from all of the Shamah Group shareholders for it to be valid. Plaintiff contends that the Shareholders' Agreement must be fully executed because the Shareholders' Agreement named eight individual parties and "contemplated execution by all of the parties." Opp. at 10-11. Such statements, however, are insufficient to require the signatures of all parties, and the Shareholders' Agreement does not contain any language requiring it to be fully executed before it becomes binding. *See* Dkt. 12-2 at 1-8. The absence of any such language here dooms Plaintiff's argument because New York law holds that even "[t]he inclusion, in the formal document intended to encompass the terms of an agreement, of the language that '[t]he Agreement is complete and binding upon its execution by all signatories' is simply insufficient to be treated as an explicit reservation that the parties should not be bound by the terms of their agreement until the written agreement is fully executed." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 124 (1st Dep't 2009).

Furthermore, just as the Shareholders' Agreement does not require all of the shareholders to sign the agreement, the Shareholders' Agreement also does not require its delivery. Plaintiff identifies no statutory basis for requiring delivery, Opp. at 11, and the Shareholders' Agreement does not condition enforcement based on the delivery of the contract. *See CBRE, Inc. v. Pace Gallery of N.Y., Inc.*, No. 1:17-cv-02452-ALC-SN, 2021 WL 1198644, at *6 (S.D.N.Y. Mar. 30, 2021) ("Under New York law, contract formation is not defeated by nondelivery of the written document unless the parties condition its enforcement upon physical delivery."). Plaintiff relies on

- 8 -

*Schwartz v. Greenberg*, 304 N.Y. 250, 254-55 (1952), for the proposition that delivery is required to form a valid contract, but delivery was required in *Schwartz* only because the parties had entered into a formal contract that expressed an intent not to be bound "until a written agreement had been signed and delivered." However, the Shareholder's Agreement contains no such requirement.[5] The Shareholders' Agreement is therefore binding even if Isaac Shamah "forgot" to get the signatures of his other family members.

### C.   This Case Fits Squarely Within The Broad Arbitration Provision In The Shareholders' Agreement

Plaintiff acknowledges that the arbitration provision in the Shareholders' Agreement states that it applies to "[a]ny dispute relating to or arising out of this agreement," but remarkably, Plaintiff contends that the claims in this case fall outside of that broad provision. *See* Opp. at 14-17. Plaintiff's argument fails for three reasons.

First, the arbitration provision in the Shareholders' Agreement states that it applies to "[a]ny dispute relating to or arising out of this agreement," and under well-established case law, this provision is all-encompassing. Plaintiff claims that "the introductory phrase 'any dispute' does not serve to make this a broad clause, because that language is then limited and qualified by the immediately following words 'relating to or arising *out of this agreement*.'" Opp. at 14-15. This argument is directly contradicted by on-point case law, which recognizes that an arbitration provision is not narrow just because it refers to the underlying agreement. *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 20 (2d Cir. 2005) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising *out of or relating to th[e] agreement*,' is the

---

[5] Plaintiff similarly asserts—in a footnote and without any legal authority—that Spiewak needed to submit evidence of his authority to sign on behalf of Kwik Ticket. *See* Opp. at 11 n.4. But just as a signature was not needed for the Shareholders' Agreement to be binding, evidence of authorization of a signature was also not required. *See God's Battalion*, 6 N.Y.3d at 373-74 (recognizing that an agreement can be enforceable even if it is not fully signed).

paradigm of a broad clause." (emphasis added)); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 649 (2d Cir. 2004) (finding that an arbitration provision is broad when it applied to "any controversy, claim or dispute between the Parties *arising out of or relating in any way to this Agreement*" (emphasis added)).

Second, the Spiewak Defendants accurately identified in their Motion to Compel a variety of Plaintiff's allegations that are directly related to the Shareholders' Agreement. *See* Mot. at 10-11. Plaintiff asserted allegations concerning Mr. Spiewak's responsibilities and compensation, and those allegations directly relate to the sections in the Shareholders' Agreement entitled "Operation of the Business" and the "Employment of Mr. Spiewak." *See* Dkt. No. 12-2 at ¶¶ 3, 4. Plaintiff herself has previously acknowledged to this Court that her claims relate to the Shareholders' Agreement when arguing that "Mr. Spiewak's unilateral actions are particularly offensive in light of Stockholder's Agreement . . . ." Dkt. No. 29 at 4. She also accused Mr. Spiewak of "disregard[ing] the Stockholder's Agreement." *Id.* These admissions firmly establish the relatedness of the Shareholders' Agreement.

Third, Plaintiff fails when she tries to argue that her claims are based on other sources of law, besides the Shareholders' Agreement. Plaintiff asserts, for example, that her compensation arguments are based on "other and much later agreements." *See* Opp. at 16. She of course never identifies those alleged "later agreements," and such "later agreements" would not nullify the relevance of the Shareholders' Agreement. Instead, if true, her argument merely shows that one or more agreements may be relevant to Plaintiff's claims, but there is no suggestion that any of these unidentified "other agreements" contained an amendment to the arbitration provision at issue. Plaintiff also tries to tie her claims back to the formation of Kwik Ticket, and while "New York statutory and common law" about the formation of a company may have a role to play in this

litigation, those sources of law do not displace or somehow exclude the binding provisions of the Shareholders' Agreement. *See, e.g.*, *Bamira v. Greenberg*, 256 A.D.2d 237, 237 (1st Dep't 1998) (recognizing that the parties to a shareholders' agreement were bound by that agreement even when the underlying corporation was never formed).

Overall, the Shareholders' Agreement contains a broad arbitration provision that applies to this case because Plaintiff asserts specific challenges to Mr. Spiewak's responsibilities and compensation at Kwik Ticket. This Court must therefore compel this dispute to arbitration.

### D.    The Spiewak Defendants Are Not Judicially Estopped From Invoking The Arbitration Provision In The Shareholders' Agreement

In a last-ditch effort to get this Court to ignore the Shareholders' Agreement, Plaintiff muddles the procedural history of the State Court Action to argue that the Spiewak Defendants are judicially estopped from asserting that there is a binding arbitration provision. *See* Opp. at 17-19. But judicial estoppel does not apply in this case because Plaintiff misrepresents the parties, their arguments, and the rulings in the State Court Action.

First, Plaintiff misrepresents the identity of the parties in the State Court Action. *See* Opp. 17-19. The sole plaintiff in the State Court Action was Kwik Ticket, Inc. Dkt. No. 15-1. None of the Spiewak Defendants in this case were parties to the State Court Action. *Id.* The defendant in the State Court Action was Isaac Shamah, who is not a party here. *Id.*[6] These facts are crucial because judicial estoppel only applies to a position that was taken by the "same party" in prior litigation. *See DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010). Here, the Spiewak Defendants in this case are not the same as Kwik Ticket in the State Court Action, and as a result, Plaintiff is unable to establish the first element of judicial estoppel. *See id.*

---

[6] Florence Shamah was initially named as a defendant in the State Court Action, but Kwik Ticket dropped her from the case shortly thereafter. See Dkt. No. 43 at 3.

Plaintiff tries to blur the identities of the Mr. Spiewak and Kwik Ticket by asserting that "Spiewak, in his role as President, authorized the corporation to bring [the State Court Action] . . . ." Opp. at 18. This argument fails, however, because Mr. Spiewak's role in managing Kwik Ticket does not change the fact that Kwik Ticket is a legally separate entity from Mr. Spiewak. *See, e.g.*, *Svenningsen v. Ultimate Prof'l Grounds Mgmt., Inc.*, No. 14 Civ. 5161 (NSR), 2017 WL 3105871, at *3-4 (S.D.N.Y. July 20, 2017) (recognizing that an individual is not the same as an LLC for purposes of judicial estoppel).[7] By comparison, Plaintiff cites no law establishing that Mr. Spiewak can be equated with Kwik Ticket. *See* Opp. at 17-19.[8]

Plaintiff also fails in her attempt to somehow equate Mrs. Spiewak, Malkah Jacobovits, and Joel Boikess with Kwik Ticket. *See* Dkt. 81 at 1. Whatever the relationship between Mr. Spiewak and Kwik Ticket, Plaintiff never provides any basis for concluding that Kwik Ticket is identical to, or in privity with, the other three defendants in this case. *See id.*

Second, Plaintiff misrepresents the arguments litigated in the State Court Action. *See* Opp. at 17-19. In that action, Kwik Ticket sought emergency relief to stop Isaac Shamah from interfering with and continuing to harm Kwik Ticket's operations. *See* Dkt. No. 43. The parties' arguments did not address (or even touch on) the applicability of the arbitration provision in the Shareholders' Agreement. *See id.* Indeed, that issue never came up in the State Court Action because (1) Isaac Shamah had transferred his shares to his mother and he was no longer a shareholder under the Shareholders' Agreement, *see* Dkt. No. 81 at ¶ 10, and (2) urgent injunctive relief was necessary to protect Kwik Ticket from Isaac Shamah and the state court was the appropriate forum to issue

---

[7] Notably, in the State Court Action, plaintiff Kwik Ticket was represented by attorneys from Goldberg Weg & Markus PLLC, who are not counsel to the Spiewak Defendants in this case. *See* Dkt. No. 15-1; Dkt. No. 81.

[8] By asserting here that Mr. Spiewak is the same as Kwik Ticket, Plaintiff further undermines her RICO argument that she pled an "enterprise" that was distinct from the individual "persons" operating it. *See* Opp. at 18, 20-23.

a restraining order.[9] As a result, Kwik Ticket never advanced any arguments in the State Court Action that are "clearly inconsistent" with the Spiewak Defendants' arguments in this case, and judicial estoppel is accordingly improper for this reason as well. *See DeRosa*, 595 F.3d at 103.

Because Plaintiff is unable to identify an inconsistency between the arguments in the State Court Action and in this case, she instead bases her judicial estoppel argument on an *out-of-court email* allegedly from Kwik Ticket's counsel in the State Court Action (who is not counsel to the Spiewak Defendants in this case) to Isaac Shamah's counsel. Opp. at 17-19. In the email, Kwik Ticket's counsel allegedly asserted that the Shareholders' Agreement had not been in use for the past forty years. Matalon Decl. at ¶ 5 and Exhibit B. However, this email does not provide an inconsistent position for judicial estoppel purposes. First and foremost, Kwik Ticket's counsel never specifically repudiated the arbitration provision. Next, this was an email *between counsel*, and not a filing in court. Additionally, statements made by counsel of a party in one case cannot be imputed to separate parties represented by separate counsel in a different case. Finally, the Shareholders' Agreement had a no-waiver clause providing that the mere disuse of a provision of the Shareholders' Agreement was not sufficient to modify it, except in a signed writing by the parties, and the arbitration provision therefore still remains in effect today. *See* Dkt. No. 12-2 at ¶ 14; *see also Kamin v. Koren*, 621 F. Supp. 444, 447 (S.D.N.Y. 1985) (enforcing a nearly identical anti-waiver clause).

Third, Plaintiff misrepresents the ruling of the court in the State Court Action. *See* Opp. at 17-19. Although Plaintiff asserts that "Spiewak's no-need-to-arbitrate position . . . led directly to judicial relief," the state court made no ruling on the arbitration provision in the Shareholders'

---

[9] Such litigation is permitted when parties are bound by an arbitration clause. *See* CPLR 7502(c); *Cell Tower Lease Acquisition, LLC v. Rego Park N.H. Ltd.*, 144 A.D.3d 453, 453 (1st Dep't 2016) (recognizing that both the Federal Arbitration Act and New York CPLR article 75 allow parties to seek "judicial injunctions in aid of arbitration").

Agreement. *See* Dkt. No. 43. Indeed, neither Isaac Shamah nor Kwik Ticket raised any arguments about the arbitration provision, and the state court accordingly did not adopt any position on an argument not made before the court. *See id.* In short, when the State Court Action is accurately described (which Plaintiff did not do), it provides no basis for judicial estoppel in this case.[10]

## II.   Alternatively, This Court Should Grant The Spiewak Defendants' Motion To Dismiss

### A.   Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(c)

Kwik Ticket is a legitimate business that produces approximately $7 million in yearly revenue. *See* Dkt. No. 81 at ¶¶ 9, 19, 21. It is not a criminal operation, and Plaintiff's allegations amount to nothing more than accusations that the Spiewak Defendants occasionally siphoned money out of Kwik Ticket for their personal benefit. These garden variety accusations of fraud do not provide the required elements of a federal RICO claim.[11]

#### 1.   Plaintiff Continues To Conflate The Spiewak Defendants With The Required "Enterprise"

Plaintiff fails to show that the Spiewak Defendants' purported self-dealing (which the Spiewak Defendants vehemently deny) amounts to a RICO "enterprise." *See* Opp. 20-23. Plaintiff argues that a company can be an "enterprise" and its employees and shareholders can be "persons" for RICO purposes, and she asserts that Kwik Ticket is the "enterprise" while the Spiewak Defendants are the "persons." Opp. at 20-23. But such labels are inconsistent with her allegations.

---

[10] The Spiewak Defendants' moving brief argued that this Court should also compel arbitration for the claims against Mrs. Spiewak and Ms. Jacobovits. Plaintiff's opposition does not challenge those arguments. Instead, Plaintiff focuses only on the arguments about Mr. Spiewak and the arbitration provision in the Shareholders' Agreement. Thus, if the Court determines that the arbitration provision in the Shareholders' Agreement compels arbitration as to Mr. Spiewak, this Court should also compel arbitration as to Mrs. Spiewak and Ms. Jacobovits as well.

[11] Plaintiff suggests in her opposition brief that this Court should give her leave to amend, but Plaintiff has already amended her complaint once, and even now, the allegations show that Plaintiff's claims are nothing more than "garden-variety state common law claims." *See Gross v. Waywell*, 628 F. Supp. 2d 475, 482 (S.D.N.Y. 2009). Thus, further amending the complaint would be futile and any request for leave to amend should be denied. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that leave to amend is properly denied as futile when "better pleading will not cure" defects in a complaint).

In the Amended Complaint, Plaintiff accuses the Spiewak Defendants of "theft and looting of an enterprise [Kwik Ticket]." Opp. at 20. She asserts that the Spiewak Defendants' actions "corrupted a New York corporation [Kwik Ticket]," and she writes that the Spiewak Defendants' alleged "victims include Kwik Ticket." *Id.* These statements demonstrate that Plaintiff is alleging that the Spiewak Defendants made Kwik Ticket the *victim*, not the *enterprise*. As the Southern District of New York explained in the factually similar case of *Gross v. Waywell*, 628 F. Supp. 2d 475 (S.D.N.Y. 2009) (involving allegations of employees who embezzled company funds for personal expenses), such allegations "blur[red] the necessary distinction between the 'person' who unlawfully conducts the affairs of an 'enterprise' and the enterprise itself." *Id.* at 498.[12]

Instead of providing factual allegations showing how Kwik Ticket was a RICO enterprise, Plaintiff simply asserts that she does not need to do so because she can describe the "structure and organization" of Kwik Ticket's corporate activities (New York corporation, principal place of business in Brooklyn, sells tagging and related supplies, etc.). Opp. at 22-23. But the case law requires a plaintiff to show "the structure and organization of the alleged *enterprise*," not merely the workings of a corporation. *See United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007). Plaintiff's silence about Kwik Ticket as an enterprise reveals that Plaintiff's allegations could never support a federal RICO claim. *See Gross*, 628 F. Supp. 2d at 485-99; *see also Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) ("Mere common-law fraud does not constitute racketeering activity for RICO purposes.").[13]

---

[12] Plaintiff asserts that the Spiewak Defendants' motion made this argument "without relevant authority," Opp. at 22, but the motion did indeed cite *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 163 (2001), for the proposition that a RICO defendant must have "participated in the conduct of the enterprise's affairs, not just their own affairs," Mot. at 20.
[13] Plaintiff's opposition brief also misstates the Spiewak Defendants' argument about RICO derivative claims. Opp. at 21-22. The Spiewak Defendants did not claim that "there can never be a derivative RICO action," but instead pointed out that when a plaintiff asserts a RICO claim in a derivative action, the Court must carefully ensure that the requirement of distinctness is satisfied, such that "the same entity cannot appear as both the RICO 'enterprise' and a defendant in the same action." *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 226 (E.D.N.Y. 2005). Yet, that is precisely

### 2. Plaintiff Is Unable To Identify The Required Predicate Acts

Plaintiff was unable to explain in her opposition brief how her allegations against the Spiewak Defendants amounted to any of the required predicate acts for a federal RICO claim. *See* Opp. at 23-26. She merely falls back on vague and conclusory allegations that the Spiewak Defendants violated federal and state law, although none of these allegations provide the required specificity as to each individual defendant, especially under the heightened pleading standard of Rule 9(b). *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172-73 (2d Cir. 1990).

Specifically, for mail and wire fraud, Plaintiff asks this Court to assume that her vague allegations about tax filings and distributions would have involved mail or wire fraud. *See* Opp. at 23-25. However, this Court should not assume that mail or wire transfers occurred simply because Kwik Ticket paid its taxes and made distributions. *See, e.g.*, *Utz v. Correa*, 631 F .Supp. 592, 596 (S.D.N.Y. 1986) (holding that the delivery of a letter by messenger was not mail fraud because the letter was not sent through the U.S. Postal Service); *Trautz v. Weisman*, 809 F. Supp. 239, 243-44 (S.D.N.Y. 1992) (finding no wire fraud because, even though the plaintiffs "unlawfully opened, signed, cashed, and deposited" a check, "we do not perceive any use of the wires"). And even if Kwik Ticket's taxes and distributions involved mail or wire transfers, Plaintiff does not show that the other elements of these federal crimes were established. *See* 18 U.S.C. §§ 1341, 1343.[14]

Similarly, for money laundering, Plaintiff argues that the purportedly falsified business entries in Kwik Ticket's books and records amount to a felony under New York state law, which in turn provides the required "unlawful activity" necessary to establish money laundering under

---

what Plaintiff did here by alleging that the individual Spiewak Defendants tried to defraud Kwik Ticket. Plaintiff's allegations treat the Spiewak Defendants as both the "enterprise" and the defendants, which further demonstrates that Plaintiff's allegations do not identify a proper "enterprise" for this RICO claim. *See id.*

[14] Plaintiff cites to a Third Circuit case for an example in which forty-one mailings for disbursements and taxes were used as the basis of mail fraud, but that case contained specific allegations detailing the nature of those forty-one mailings, and no such specific allegations are present here. *See Tabas v. Tabas*, 47 F.3d 1280, 1286 (3d Cir. 1995).

federal law. *See* Opp. at 25-26. Again, Plaintiff's argument makes unsupported assumptions about Plaintiff's vague and conclusory allegations, and she does not address many of the required elements for those crimes. *See* 18 U.S.C. § 1956; N.Y. Penal Law §§ 175.05, 175.10.

Finally, Plaintiff asserts that the Spiewak Defendants engaged in commercial bribery in violation of New York Penal Law § 180.03, but such a determination cannot be made "by a bare bones statement of the legal claim without any supporting facts" and a plaintiff would need to at least assert "how much was paid, when it was paid, or how it was delivered." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 311, 318 (S.D.N.Y. 2009) (citation omitted). Plaintiff offers a mere four-line paragraph to assert that each of the Spiewak Defendants violated this statute, and she provides no analysis of the statute's elements. *See* Opp. at 26.

### 3.   Plaintiff Does Not Show That Any Predicate Acts Were Related

This Court must examine whether relatedness was present among the *predicate acts*. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239-40 (1989). But Plaintiff only identifies commonalities among the Spiewak Defendants' "fraudulent schemes"—not their predicate acts. *See* Opp. at 27-28. The reason for this inadequacy is simple: after providing only vague and conclusory allegations about any purported predicate acts, Plaintiff is unable to now identify any specific facts that are common to those predicate acts. *See id.* Plaintiff's conclusory arguments, therefore, fail to establish relatedness.

### 4.   Plaintiff Does Not Show That Any Predicate Acts Had Closed-Ended Or Open-Ended Continuity

Just as predicate acts must be related, they must also be continuous, and Plaintiff again does not provide any specific allegations about the predicate acts. *See* Opp. at 28-29. She simply refers to her general allegations that the Spiewak Defendants occasionally siphoned money out of

the company, but RICO requires the continuity to be established among the *predicate acts*. *See H.J. Inc.*, 492 U.S. at 239-40. Plaintiff therefore fails to establish the required continuity. *See id.*

But even if Plaintiff's allegations are considered for continuity purposes, Plaintiff still fails to show closed-ended or open-ended continuity. Plaintiff claims she showed closed-ended continuity by alleging that "the predicate acts stretch back nearly two decades ago" and by attaching several purportedly fraudulent invoices from June through August 2013. Opp. at 28-29. Both allegations, however, are insufficient. Plaintiff's allegation that continuity stretched back 20 years is too conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As for the alleged 2013 invoices, they span a mere three months, and the Second Circuit has required *at least two years*. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (holding that the relevant period of time for evaluating closed-ended continuity is "the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated").

Plaintiff fares no better with her allegations about open-ended continuity. She asserts that the Spiewak Defendants will resume their fraudulent conduct because Kwik Ticket obtained a preliminary injunction in the State Court Action barring Isaac Shamah from the Kwik Ticket offices. Opp. at 29. This is a baseless, spurious argument that ignores the fact that the preliminary injunction in the State Court Action was needed—and imposed—because Plaintiff's son was wrongly interfering with Kwik Ticket's management. *See* Dkt. 81 at ¶¶ 44-45. The state court is not part of any criminal enterprise.

### 5.    Plaintiff Does Not Show Interstate Commerce

Plaintiff improperly conflates Kwik Ticket's legitimate business activity with the activities of the enterprise that she alleges. *See* Opp. at 29-30. She tries to define the "enterprise" so broadly as to include all of Kwik Ticket's business activities, but as explained above, the entirety of Kwik Ticket is not a RICO "enterprise" because Plaintiff simultaneously describes Kwik Ticket as the

victim of the Spiewak Defendants' enterprise. *See* Opp. 20-23. Plaintiff thus needs to show that the Spiewak Defendants' alleged siphoning of funds involved interstate commerce, and she does not even attempt to do that. *See* Opp. at 29-30.

### B.    Plaintiff Fails To State A RICO Claim Under 18 U.S.C. § 1962(d)

Plaintiff claims that the Supreme Court's opinion in *Salinas v. United States*, 522 U.S. 52 (1997) allows her to state a claim for RICO conspiracy under § 1962(d) despite her failure to establish any of the above requirements for a RICO claim under § 1962(c). Opp. at 30-31. But Plaintiff is wrong. Although *Salinas* recognizes that not all of the requirements of § 1962(c) are applicable to a conspiracy claim under § 1962(d), to state a viable claim under § 1962(d), Plaintiff must still "allege the existence of an agreement to violate RICO's substantive provisions." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Here, the same factual predicates that fail to establish a claim under § 1962(c) also fail to show any agreement to violate RICO. *E.g.*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004) ("[B]ecause Plaintiff's RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims.").[15]

### C.    Plaintiff Did Not Identify Any Tangible Personal Property For A Conversion Claim

Plaintiff argues that stolen money can be the basis for a conversion claim, but that is not what Plaintiff pled in her Amended Complaint. *See* Opp. 31-32. The Amended Complaint asserts that "Larry Spiewak and Malkah Jacobovits exercised the right of ownership over property belonging to the Company, to the exclusion of the Company's rights," Dkt. No. 81 at ¶ 103, and

---

[15] Plaintiff asserts that the Spiewak Defendants' case law is "outdated," but *Salinas v. United States*, 522 U.S. 52 (1997), was decided in 1997, and *First Capital* was decided after that in 2004. Plaintiff tries to imply that *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011) broke new ground in the Second Circuit, but that opinion simply applied *Salinas*. Additionally, the language that Plaintiff quotes from *Applins* that purportedly "echoed" *Salinas* is actually language that was taken from an opinion issued in 1991. *See* Opp. at 30-31. The Spiewak Defendants' RICO analysis is not outdated, but is consistent with current RICO case law.

such language is insufficient to state a viable conversion claim. *See, e.g.*, *C & B Enters. USA, LLC v. Koegel*, 136 A.D.3d 957, 958-59 (2d Dep't 2016) (the alleged "interference with the right of [a company's] possession of its Property" and interference "with [the individual plaintiff's] right to possession of his ownership of [the company]" could not be used to establish conversion).

> **D.      Plaintiff Is Unable To Show Any "Irreparable Harm" For An Injunction**

Plaintiff urges this Court to reexamine its prior finding that no "irreparable harm" is present in this case, but she provides this Court with no basis for reaching a different conclusion. *See* Opp. at 32-33. This Court correctly concluded before that no irreparable harm is present because Plaintiff could be compensated with monetary damages and because Plaintiff herself delayed in bringing this case. Dkt. No. 32 at 3-5.

**III.    This Court Should Strike The Amended Complaint's Immaterial, Impertinent, And Scandalous Material**

Plaintiff is unable to justify her attempt to shame Mr. Spiewak in federal court. She added Paragraphs 49 to 53 and Exhibits N and O to the Amended Complaint even though they have absolutely no bearing on Plaintiff's allegation that the Spiewak Defendants siphoned money from Kwik Ticket, and Plaintiff does not provide any legitimate basis for their inclusion in her opposition brief. *See* Opp. at 33-35. She vaguely asserts that she needed to post the audio files on YouTube to seek reimbursement of settlement funds, but she could have made the exact claim without the alleged transcripts or public posting of the audio files. These allegations and Exhibits have no real bearing on the case and will prejudice Mr. Spiewak, and this Court should therefore strike them. *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002).

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should grant the Spiewak Defendants' Motions, along with such other and further relief as the Court deems just, proper, and equitable.

Dated:  New York, New York
        October 21, 2021                    **REED SMITH LLP**


                                            By:  /s/ Samuel Kadosh_____
                                                 Joseph Tuso
                                                 Samuel Kadosh
                                                 599 Lexington Avenue
                                                 New York, New York 10022
                                                 Tel.: (212) 521-5400
                                                 Fax: (212) 521-5450

                                                 *Attorneys for Defendants*
                                                 *Larry Spiewak, Mindy Spiewak, and Malkah*
                                                 *Jacobovits*