UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------x

KWIK TICKET INC., by its 50% owner
FLORENCE SHAMAH

                Plaintiff,

   -against-

LARRY SPIEWAK, et al.

                Defendants.

----------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 20-cv-01201 (FB)

*Appearances:*
*For Plaintiff:*
YOSEF ROTHSTEIN
Matalon PLLC
450 Seventh Ave.
New York, NY 10123

JOSEPH LEE MATALON
Wachtel Missry LLP
885 Second Ave., 47th Floor
New York, NY 10017

*For Defendants Larry Spiewak, Mindy Spiewak & Malkah Jacobovits*
JOSEPH J. TUSO
JOSHUA NEWBORN
SAMUEL KADOSH
Reed Smith LLP
1717 Arch St.
Philadelphia, PA 19103

*For Defendant Joel Boikess*
BETTY LUGO
CARMEN ANGELICA PACHECO
Patcheco and Lugo, PLLC
340 Atlantic Ave.
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

     Florence Shamah ("Plaintiff") is a 50% shareholder of Kwik Ticket, Inc.

("Kwik"). She brings this action on behalf of Kwik alleging fourteen counts of

1

RICO, fraud, breach of fiduciary duty, breach of contract, repayment of legal fees improperly charged, conversion, and unjust enrichment against defendants Larry Spiewak ("Mr. Spiewak"), Mindy Spiewak ("Mrs. Spiewak"), Malkah Jacobovits ("Jacobovits"), and Joel Boikess ("Boikess") (together, the "Defendants"). During the period in question, Mr. Spiewak, Mrs. Spiewak, and Jacobovits (the "Inside Defendants") were all employed by Kwik and Boikess was the outside accountant for the company.

The Inside Defendants together move to compel arbitration, dismiss several of the counts against them, and to strike a portion of the Amended Complaint. Boikess has separately moved to dismiss. For the following reasons, the Inside Defendants' motion to compel is granted, their motion to strike is denied, and the case is stayed pending arbitration.

## I.    Background

This case stems from a bitter dispute between Kwik's decades-long business partners. On one side is Florence Shamah, the widow of Kwik's co-founder. She holds 50% of Kwik's shares and is a passive investor who is not involved in the operations of the business. On the other side is Larry Spiewak, Kwik's President and the company's other co-founder, his wife and Kwik employee, Mindy Spiewak, Kwik's office manager, Malkah Jacobovits, and the company's outside

accountant, Joel Boikess. Mr. Spiewak and Plaintiff's late husband formed Kwik, a New York corporation based in Brooklyn, more than forty years ago. The company purchases items such as tags, plastic barbs and labels in bulk from manufacturers, then resells them to retail stores. In recent years, Kwik has reported a gross revenue of approximately $7 million per year.

After the Internal Revenue Service began an audit of Kwik in 2018, Plaintiff's son and attorney-in-fact, Isaac Shamah, discovered that Defendants allegedly had been misappropriating company funds for approximately twenty years. Plaintiff alleges that Defendants stole money from the company by writing checks payable to "Cash" or "Petty Cash," marking them in the company register as payable to vendors, and pocketing the money. Am. Compl. at ¶ 19. She alleges that all the Defendants were involved in and profited from this scheme. As a result of this nefarious activity, Plaintiff alleges that the company turned significantly reduced yearly profits, harming her as a shareholder. For this reason, she positions her action as a derivative shareholder suit.

Meanwhile, Defendants claim that this lawsuit stems from Isaac Shamah's desire and failed attempt to take over operation of Kwik. Defendants maintain that in September 2019, Isaac Shamah began demanding to run the company. When he was denied, he began representing to customers that he was Kwik's CEO and impersonated Mr. Spiewak in order to redirect Kwik's bank information to

Plaintiff's residence. On January 15, 2020, the Supreme Court of New York, Kings County issued a temporary restraining order barring Isaac Shamah from holding himself out as Kwik's CEO or taking any action on behalf of the company. Dkt. No. 15-2.

Plaintiff subsequently filed this action. The Court has already ruled on two separate motions for preliminary injunctions and temporary restraining orders brought by each side of the dispute, declining in each ins to grant the requested relief.

## II.    The Inside Defendants' Motion to Compel

The Inside Defendants have moved to compel arbitration based on an arbitration clause contained in Kwik's shareholders' agreement (the "Shareholders' Agreement"). To resolve a motion to compel arbitration, courts apply a two-step approach to determine: "(1) whether the parties have entered into a valid agreement to arbitrate; and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Because the Inside Defendants are situated differently in this analysis, the Court first addresses Mr. Spiewak's entitlement to arbitration and then, collectively, Mrs. Spiewak's and Jacobovits's entitlement.

4

### a. Mr. Spiewak

Mr. Spiewak satisfies the criteria required to compel arbitration. In part one of the analysis, the Court must determine if the arbitration clause in the Shareholders' Agreement is valid. The clause states: "Any dispute relating to or arising out of this agreement shall be resolved by arbitration before three arbitrators in the City of New York under the rules then obtaining of the American Arbitration Association." Dkt. No. 12-2 at ¶ 13. The Shareholders' Agreement that contains the clause is signed by Mr. Spiewak, Kwik,[1] and Isaac Shamah, who subsequently transferred his shares to Florence.

Plaintiff argues that the arbitration clause is invalid because the Shareholders' Agreement was not signed by all existing shareholders at the time it was executed.[2] However, it was signed by Kwik, Mr. Spiewak, and Isaac Shamah, who assigned his shares to Plaintiff. His obligation to arbitrate transferred with

[1] At the time, Kwik was known as Swift Ticket, Inc. and the Shareholders Agreement is signed under this name.

[2] Six blank signature blocks appear on the Shareholders' Agreement, including for David and Florence Shamah, three other individuals with the surname 'Shamah', and a man named Irwin Abraham. All of the shares owned by him and the Shamahs were subsequently consolidated under Plaintiff's ownership. Also, Isaac Shamah has represented that he was designated to draft the Shareholders' Agreement on behalf of the shareholders, that it "was designed to govern and bind all shareholders" and that he "forgot" to have the remaining shareholders sign the agreement. Isaac Shamah Decl. at 3. Regardless, Florence Shamah now owns all of the non-signing parties' shares, including the shares owned by one of the signatories to the agreement–Isaac Shamah.

these shares to Plaintiff. Also, under general New York contract law principles, neither the Shareholders' Agreement nor the arbitration clause must be signed in order to be valid. *See God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc.*, 6 N.Y.3d 371, 373-74 (2006) ("[A]n arbitration clause in a written agreement is enforceable, even if the agreement is not signed, when it is evident that the parties intended to be bound by the contract."). Because the objective manifestations of the parties' intent demonstrate the validity of a contract, not the signatures, the Court looks to the parties' intent to determine the Shareholders' Agreement's validity. *See Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y. 3d 363, 368 (2005).

During this action, Plaintiff has relied on the validity of the Shareholders' Agreement in previous submissions to the Court, including in her application for a temporary restraining order and preliminary injunction and in multiple supporting declarations. This demonstrates that she intended to benefit from and be bound by the Shareholders' Agreement, including its arbitration clause. In addition, the timing of her new assertion that the Shareholders' Agreement is invalid, which she first brought up in response to this motion to compel, further undermines her assertion. *See In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 195 (2d. Cir. 2013).

Next, the Court considers whether the dispute is within the scope of the arbitration agreement. "In determining the scope of an arbitration agreement, there

is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010). In accordance with this judicial preference to enforce arbitration agreements, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

The arbitration clause at issue states that "[a]ny dispute relating to or arising out of this agreement" shall be arbitrated. This broad provision covers the claims brought by Plaintiff against Mr. Spiewak. All of the claims against Mr. Spiewak stem from alleged actions he took as President of Kwik. The Shareholders' Agreement governs Mr. Spiewak's employment and responsibilities at Kwik, including the time he was to dedicate to the company and his compensation. Because Mr. Spiewak's alleged misdeeds all depended on his role at Kwik and the alleged defiance of his duties to the company, the Court finds that the arbitration clause covers the claims brought against him.

### b. Mrs. Spiewak and Jacobovits

The Court now turns to whether Mrs. Spiewak and Jacobovits may rely on

the arbitration clause in the Shareholders' Agreement. These two defendants were not parties to the Shareholders' Agreement. However, they were employees of Kwik at the time of their alleged misconduct, and Kwik is a party to the agreement. Courts in the Second Circuit have held that equitable principles allow non-parties to an arbitration agreement to rely on the agreement when: (i) the allegations against the parties that are bound by the agreement are factually intertwined with the allegations against the non-parties; and (ii) a relationship exists among the parties that justifies estopping a party to the agreement from refusing to arbitrate with the non-parties, given its obligation to arbitrate with parties to the agreement. *See Choctaw Generation LP v. Am. Home Assurance Co.*, 271 F.3d 403, 404 (2d Cir. 2001); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F. 3d 354, 359 (2d. Cir. 2008).

Mrs. Spiewak and Jacobovits satisfy both of these requirements. The alleged conduct is necessarily intertwined, as all of the Inside Defendants were alleged to have participated in a racket to defraud the company. In addition, Mrs. Spiewak and Jacobovits were Kwik employees at the time of their alleged misdeeds. Kwik is a party to the Shareholders' Agreement containing the arbitration provision, and it was foreseeable therefore that the two may invoke protection from the agreement if claims covered by the agreement were brought against them. Thus, the Court grants the motion to compel as to Mrs. Spiewak and Jacobovits, as well. In

accordance with the Federal Arbitration Act, the claims against the Inside
Defendants are stayed pending arbitration and the court declines to rule on their
motion to dismiss. 9 U.S.C. §§ 3, 4.

### III.    The Inside Defendants' Motion to Strike

The Inside Defendants also move under Federal Rule of Civil Procedure
("FRCP") 12(f) to strike Paragraphs 49 to 53 and Exhibits N&O of the Amended
Complaint. FRCP 12(f) allows a court to strike from a pleading "immaterial,
impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because this action is
stayed and not dismissed, the Court retains jurisdiction to decide the motion to
strike.

Paragraphs 49 to 53 of the Amended Complaint contain transcripts of
alleged inappropriate conversations that Mr. Spiewak had with Kwik employees,
and Exhibits N and O are the audio files of those conversations. These
conversations were used as support for an action brought by a former employee
that resulted in a settlement. One of the counts in the Amended Complaint seeks
recovery for legal fees improperly charged to Kwik by Mr. Spiewak for the action
that stemmed in part from these conversations. Plaintiff asserts that this action
resulted solely from Mr. Spiewak's misconduct and that therefore, Kwik should
not have paid expenses related to this action. Paragraphs 49 to 53 and Exhibits

N&O support the allegation that the resulting legal action was a result of Mr. Spiewak's misconduct alone. Therefore, the Court find them relevant and denies the motion to strike.

## IV.   Boikess's 12(b)(6) Motion

Separate from the Inside Defendants' motion to compel, dismiss, and strike, Boikess moves under 12(b)(6) to dismiss the claims against him. These claims include the RICO claims against all defendants, breach of fiduciary duty, conversion, and for a preliminary and permanent injunction. Boikess has not moved to compel arbitration, since he was an outside accountant and the Shareholders' Agreement containing the arbitration clause has no bearing on him. However, while he cannot compel Plaintiff to arbitrate the claims against him, the outcome of the claims against Boikess are inextricably intertwined with the claims to be arbitrated against the Inside Defendants, since they stem from conduct allegedly undertaken by all of the Defendants in concert.

Trial courts have discretion to stay actions before them pending the resolution of independent proceedings, including arbitral proceedings. This rule does not require that the issue in such proceedings control the action before the court. "A stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue

in the litigation." *The Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482 (S.D.N.Y. 2011). "Stays are particularly appropriate where they 'promote judicial economy, avoidance of confusion and possible inconsistent results.'" *Birmingham Associates Ltd. v. Abbott Laboratories*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008) (quoting *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 838 (E.D.N.Y. 1994)). A court may stay a case *sua sponte* so long as the reasons for doing so are consistent with principles of fairness and judicial economy. *See S.E.C. v. Chestman*, 861 F. 2d 49, 50 (2d Cir. 1988).

Plaintiff alleges that Boikess prepared financial statements for Kwik that contained accounting for fraudulent transactions which Boikess treated as legitimate expenses, despite knowing that they were fraudulent. Because each claim against Boikess is premised on or tied to a fraudulent act committed by one of the Inside Defendants, the outcome of the claims against the Inside Defendants necessarily affects the outcome of the claims against Boikess. Deciding Boikess's motion now may unfairly affect the arbitral proceedings or result in inconsistent outcomes for the parties. And, since the Court has found that the claims against the Inside Defendants must be arbitrated, the Court finds that the claims against Boikess must be stayed in the interest of fairness and judicial economy.

## CONCLUSION

For the foregoing reasons, the Inside Defendants' motion to compel is granted and their motion to strike is denied. This case is stayed pending arbitration, including the motions to dismiss brought separately by the Inside Defendants and Boikess.

**SO ORDERED.**

  _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 17, 2022

12